SMITH v. NEWELL et al.

(Circuit Court, D. Utah. · March 21, 1898.)

No. 191.

1. MINERAL CLAIM—LOCATION MARKS—SUFFICIENCY.

Location of a mineral claim, parallelogram in shape, was marked upon the ground by placing at each corner stakes about 4 feet high, and similar stakes at the discovery point, and at points upon the side lines. On the discovery stake, and upon a tree about 20 feet therefrom, were placed notices of location, containing the name of the claim and its description, date of location, and the names of the locators. *Held*, that the claim was sufficiently indicated upon the ground, though all of the stakes were not marked with the name of the claim.

2. SAME—OBLITERATION OF MARKS.

When a mineral claim is once properly marked upon the ground, the rights of the locators are not affected by the subsequent obliteration of the marks, or the removal of the notice without their fault.

3. SAME—RECORD—SUFFICIENCY OF DESCRIPTION.

A recorded notice of location, in its description of a claim, erroneously referred to the "southeasterly" end of another claim, when the claim had no such boundary, and described a distance of 400 feet as "4," and gave the courses of a certain boundary line as "northerly" and "southerly," when the courses of such line were not true north and south. The notice correctly described the location with reference to a well-established line of another claim, and with the aid of the location stakes the lines of the claim could be easily ascertained, by applying the description of the record to the stakes and monuments. *Held*, that the recorded description was sufficient.

4. SAME—PRIOR LOCATION—PRESUMPTION OF DISCOVERY.

Proof of a record of a prior location, and the marking of it on the ground, will not defeat a subsequent location, in the absence of proof of a discovery by the prior locators. The record and the marking are not sufficient to authorize the court to presume a discovery.

Booth, Lee & Gray and Morris L. Ritchie, for plaintiff.

Brown & Henderson and D. C. McLaughlin, for defendants.

MARSHALL, District Judge. This suit is brought in pursuance of an adverse claim filed in the land office under section 2326 of the Revised Statutes of the United States, by the plaintiff, who claims to own the Alta Belle mining claim, against the application of the defendants for a patent for the Dutchman lode. The plaintiff's claim was located on May 25, 1894; the defendants', on January 1, 1889. It is not contended that the Dutchman lode was abandoned, or subject to forfeiture for failure to do the required annual work thereon; but the right of the plaintiff to recover depends on the establishment of the original invalidity of the Dutchman location. That no valid location of the Dutchman was made is claimed on three grounds: (1) That the claim was not marked on the ground, so that its boundaries could be readily traced; (2) that the record of the claim did not contain such a description of it as to identify it; (3) that at the time of the location of the Dutchman the premises were not subject to the location, but constituted a part of the Black Rock No. 1 and the Black Rock No. 2 claims. These objections will be considered in their order.

1. The evidence shows that on January 1, 1889, the locators of the Dutchman placed at each corner of the claim substantial stakes, about

4 feet high and 4 inches in diameter. Similar stakes were also placed at the discovery point of the claim, and at a point on the northwest side line, and a point on the southeast side line thereof. The shape of the claim, as marked, was approximately a parallelogram. On the discovery stake, and on a tree about 20 feet therefrom, were nailed notices of location, written on paper which contained the name of the claim, the date of location, the names of the locators, and an attempted description of the claim. The claim was on a ridge, and, while there were some trees on it, the evidence does not show that they were thick, or that there was any difficulty in seeing the corner stakes. It is said that the stakes should have been marked with the name of the claim. This was not necessary, unless the boundaries could not have been readily traced without it. The relative positions of the stakes showed their connection, and indicated a parallelogram. The location notice, nailed on the discovery stake, and placed within this parallelogram, gave all of the information that marks on corner stakes would have given. I think the claim was sufficiently marked on the ground, within the most exacting decisions on the subject. Book v. Mining Co., 58 Fed. 106–113; Southern Cross Gold & Silver Min. Co. v. Europa Min. Co., 15 Nev. 383; Warnock v. De Witt, 11 Utah, 324, 40 Pac. 205. Having been once so marked, the right of the locators thereto would not be affected by the obliteration of the marks, or the removal of the notice without their fault. Jupiter Min. Co. v. Bodie Consol. Min. Co., 11 Fed. 666; Book v. Mining Co., 58 Fed. 106–114.

2. A more serious question is presented by the second objection to the location. The location was made while Utah was a territory, but there was no statute of the territory governing the locating or manner of recording. Under the authority given them by section 2324 of the Revised Statutes of the United States, the miners of Uintah mining district had made regulations on the subject, article 5 of which was as follows:

"In order to locate a claim of a ledge, lead, lode, or deposit of rock or ore supposed to contain mineral, the locator shall first conform to the United States laws regarding mineral lands, passed May 10, 1872, and shall place a written or printed notice of the same upon the ground so claimed, a true copy of which shall be filed for record with the recorder of this district within ten (10) days of the date of such location, or such location shall be deemed void and of no effect."

On January 1, 1889, the locators filed with the recorder of the district a true copy of the written notice of location placed by them on the ground located, and which was as follows:

"Notice is hereby given that the undersigned, having complied with the requirements of section 2324 of the Revised Statutes of the United States, and the local rules, customs, and regulations of this district, has located 1,500 feet in length by four hundred feet in width on this, the Dutchman lode, vein, or deposit, bearing gold, silver, and other precious metals, situated in the Uintah mining district, Summit county, Utah, the location being described and marked on the ground as follows, to wit: Commencing at the discovery, which is 100 feet southerly of the southeasterly end line and center of Toronto location, and 100 feet southerly of said discovery is placed post No. 1; thence 1,400 feet, to post No. 2; thence 4, to post No. 3; thence 1,400 feet in a northerly, to post No. 4; thence 100 feet northerly, to post No. 5; thence 400 feet southerly, joining with the southwesterly end line of the Toronto, to post No. 6; thence

100 feet southwesterly, to post No. 1, the place of beginning. The mining claim above described shall be known as the 'Dutchman.' Located this first day of January, 1889. Names of locators: D. C. McLaughlin, 375 feet; John Kennedy, 375 feet; Frank James, 375 feet; Henry Newell, 375 feet."

The description of the claim as contained in the notice was incorrect in the following particulars: There was no southeasterly end line of the Toronto location, and the discovery was situated S., 44 deg. 21 min. W., 222.8 feet distant from the center point of the southwesterly end line of the Toronto location, instead of 100 feet southerly therefrom, as called for. From post 2 to post 3 was approximately 400 feet, while the call was "4." From post 3 to post 4, and from post 4 to post 5, the call was "northerly"; the true course, N., 56 deg. E. From post 5 to post 6, the call was "southerly, joining with the southwesterly end line of the Toronto"; the true course was S., 32 deg. E., joining with said southwesterly end line. . The last call, from post 6 to post 1, was southwesterly; the true course was S., 56 deg. W.

It will be seen that the description, as recorded, called for both the southeasterly and southwesterly end line of the Toronto lode, and that it is apparent from the calls in the notice that the one or the other is an error. When it is sought to apply the description to the ground, and it is ascertained that the Toronto claim has no southeasterly end line, the true call is at once known. The error in the call of "4," instead of "400 feet," is also shown by the notice itself. It is stated therein that the location made was 1,500 feet in length by 400 feet in width. What was intended is apparent. It is true that the courses called for vary more or less from the correct courses. In the absence of monuments, and in a deed, "southerly" would mean due south. But it is not usual for miners to locate claims with a compass, and no construction should be given the acts of congress or the regulations of the miners which would invalidate a location because of an error in the call for a course. Book v. Mining Co., 58 Fed. 115.

The regulation of the miners in question provided for the record of a true copy of the notice of location as posted on the claim; and, even if the 10 days is given in which to cure any defects in the original notice, it would still be often impossible, within that time, to survey the claim or to describe it by metes and bounds with absolute accuracy. The ordinary principle, that courses and distances give way to fixed monuments, applies to such descriptions, and the record is sufficient when it contains directions which, taken in connection with the marking of the claim on the ground, will enable a person of ordinary intelligence to distinguish the premises located from the public mineral land open to exploration. Book v. Mining Co., 58 Fed. 106–115; Pollard v. Shively, 5 Colo. 309; Brady v. Husby, 21 Nev. 453, 33 Pac. 801; Gamer v. Glenn, 8 Mont. 371, 20 Pac. 654; Upton v. Larkin, 7 Mont. 449, 17 Pac. 728.

The act of congress does not itself require a record, nor does it prescribe its effect when it is required by a regulation of the miners as in this case. But, to have any effect, it must contain the matters specified in section 2324 of the Revised Statutes, and therefore must contain "such a description of the claim or claims located by reference to some natural object or permanent monument as

will identify the claim." In this case, the regulation of the miners required a record as an act of location, and declared invalid any location of which no record was made. In the record of the Dutchman lode, not only were the stakes of the claim called for, but the call from post No. 5 to post No. 6 was for a line "joining with the southwesterly end line of the Toronto" mine. This was a reference to a permanent monument sufficient to identify the claim.

In Hammer v. Milling Co., 130 U. S. 291–298, 9 Sup. Ct. 548, the record of the claim described it with reference to its own stakes, and stated it to be "about 1,500 feet south of Vaughan's Little Jennie Mine." The objection was made that the record did not refer to such a natural object or permanent monument as would identify the claim. The court, speaking by Mr. Justice Field, said:

"Mining lode claims are frequently found where there are no permanent monuments or natural objects, other than rocks or neighboring hills. Stakes driven into the ground are in such cases the most certain means of identification. Such stakes were placed here, with a description of the premises by metes: and, to comply with the requirements of the statute so far as possible, the location of the lode is also indicated by stating its distance south of 'Vaughan's Little Jennie Mine,'—probably the best known and most easily defined object in the vicinity. We agree with the court below that the Little Jennie Mine will be presumed to be a well-known natural object or permanent monument until the contrary appears, where a location is described as in this notice, and it is further described 'as being 1,500 feet south from a well-known quartz location, and there is nothing in the evidence to contradict such a description, distance, and direction.'"

In the case at bar it affirmatively appears that the call for the southwesterly end line of the Toronto lode was correct, and that at least three of the corner stakes of the Dutchman lode were still in place several months after the location of the plaintiff's claim. Under these circumstances I am of the opinion that the ground located as the Dutchman could have been ascertained by a person of ordinary intelligence in attempting to apply the description in the record of the claim to the stakes and monuments called for.

3. The last objection urged is that when the Dutchman was located the ground was covered by prior subsisting locations. In support of this objection the plaintiff has introduced in evidence certified copies of the recorded notices of location of the Black Rock No. 1 and the Black Rock No. 2 mining claims, claiming that such locations were made January 1, 1886. The evidence also shows that said claims, long prior to January 1, 1889, had been so staked as to include the premises in controversy, and that, while no work was done thereon during the year 1888, yet that two men, acting for the person claiming to own them, entered on the claims December 31, 1888, spent the night in a tunnel on one of them, and commenced to work thereon January 2, 1889, after the location of the Dutchman. It is not necessary to decide whether the entry of the original owner with intent to do the required annual work, but without any actual resumption of such work prior to relocation, prevents such relocation, for the plaintiff has failed to show any valid location of the Black Rock claims. There is no evidence of any discovery of a vein or lode therein prior to the discovery of

the Dutchman, nor is there any evidence that the owners of the Black Rocks ever knew of any vein or indication of a vein there. It is not shown that the locators of the Black Rock claims are dead or absent, nor is it suggested that it was difficult to prove the fact of discovery, if it existed. On this point, the plaintiff's case rests on the theory that, a record of a location and the marking of it on the ground being shown, the court should presume a discovery of a vein. I do not think such a presumption should be made.

There will be a decree for the defendants, quieting their title against the plaintiff's adverse claim to the premises in controversy.