### BINGHAM AMALGAMATED COPPER CO. v. UTE COPPER CO.

(Circuit Court, D. Utah. August 22, 1910.)

#### No. 1,018.

1. MINES AND MINERALS (§ 20*)—MINING CLAIMS—MARKING BOUNDARIES ON THE GROUND.

Where stakes were set to mark the boundaries of a mining claim and proper notices posted, it was a sufficient marking upon the ground, even though the corner stakes were not inscribed with the name of the claim.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 40–44; Dec. Dig. § 20.*]

2. MINES AND MINERALS (§ 27*)—MINING CLAIMS—CONFLICTING LOCATIONS.

The fact that a mining claim which has gone to final entry without adverse claim includes the original discovery on which a prior claim was based does not necessarily defeat the right of the prior locator to the remainder of his claim, provided other veins have been discovered on such portion, and it appears that there was no actual intent to abandon the claim.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 27.*]

3. MINES AND MINERALS (§ 27*)—MINING CLAIMS—CONFLICTING LOCATIONS.

A failure to perform the required annual assessment work on a mining claim does not in and of itself work a forfeiture, but only permits a relocation, and cannot aid an adverse location which was made prior to the year in which the failure occurred.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 27.*]

Suit by the Bingham Amalgamated Copper Company against the Ute Copper Company. Decree for plaintiff.

Young & Snow, for complainant.
Dey & Hoppaugh, for defendant.

MARSHALL, District Judge. The defendant applied for a patent for the Abraham lode, and the plaintiff, claiming to be the owner of the Copper Belt No. 1 and the Copper Belt No. 2 lodes, filed its adverse claim to that application, and brought this suit in its support. The claims of the plaintiff include the entire claim of the defendant. The Copper Belt No. 1 and Copper Belt No. 2 were located on De-

cember 20, 1905, the Abraham on February 25, 1906; so that, if the plaintiff's claims were validly located, its superiority in right is apparent. It is not denied that an attempt was made by miners of some experience to locate the Copper Belt claims on the date mentioned; so that, being first in time, all reasonable intendments are in favor of the plaintiff's right. It is first objected to these locations that they were not so marked upon the ground that their boundaries could be readily traced. The evidence for the plaintiff is somewhat confusing and contradictory; and I am asked to disbelieve it. No affirmative evidence on the point is introduced by the defendant. The evidence for the plaintiff does not raise any suspicion that it has been concocted. The lack of memory as to the character of the staking, and of entire agreement between the witnesses, rather justifies the inference of honesty in witnesses who are somewhat lacking in business accuracy, rather than a prearranged conspiracy to establish a false claim. Besides this, the evidence as to the existence of the stakes is so corroborated that I am not justified in disbelieving it. Granted the staking and the placing of the location notices, I think the claims were sufficiently marked upon the ground, even if the corner stakes were not inscribed with the name of the claim. Smith v. Newell (C. C.) 86 Fed. 56.

The most serious objection is that, since this suit was brought, the Ute mining claim and the Winnifred mining claim have gone to final entry without any adverse claim on the part of the plaintiff; and, as so entered, the Ute includes the discovery of the Copper Belt No. 1, and the Winnifred a point which the defendant contends was the discovery of the Copper Belt No. 2. It is therefore argued that the claims, losing their discoveries, have ceased to exist. The Ute and Winnifred claims were located May 18, 1907, by Thomas Weir, an officer of the defendant company, and passed to final entry on December 31, 1908. Assuming, without deciding, that a final entry is the equivalent of a patent with respect to this issue, the question arises: What has been finally determined by the entry? It must be held to have been conclusively decided that, so far as those claims included parts of the plaintiff's claims, the owner of the Ute and Winnifred had the better right, and the plaintiff no valid adverse claim thereto; in other words, that on May 18, 1907, when the Ute and Winnifred were located, the ground covered by them was open to location and not owned by the plaintiff. Unless this be entirely inconsistent with the plaintiff's right to the remainder of the claims, it is no bar to this action. If the Ute and Winnifred had been prior in time to the plaintiff's locations, no right would have accrued to the plaintiff from a discovery on ground not open to location (Gwillim v. Donnellan, 115 U. S. 45, 5 Sup. Ct. 1110, 29 L. Ed. 348) but if thereafter, and before the intervention of other rights, the plaintiff had discovered a vein within the parts of its claims open to appropriation, its locations would have been good, so far as the ground was so open to appropriation. In other words, loss of the titular discovery is not necessarily loss of the claim. Erwin v. Perego, 93 Fed. 608, 35 C. C. A. 482.

In 1906, before the location of the Ute, but after the location of the Abraham, the Copper Belt No. 1 had discovered and worked a vein in the Bullock tunnel, situated in that part of the claim not covered by the Ute. Is this superiority in right of the Ute conclusive of the fact that no valid location was made by the plaintiff's grantor on December 20, 1905? It is evident that the plaintiff ought not to be precluded from showing any fact not necessarily inconsistent with the validity of the Ute. The superiority of the Ute can be supported by an abandonment of that part of the plaintiff's claims conflicting with it, and its failure to adverse the Ute application itself worked that abandonment, but left the residue of the Copper Belt No. 1 claim unaffected, provided a vein had been discovered on that residue. This was the decision in Silver City G. &S. M. Co. v. Lowry, 19 Utah, 334, 57 Pac. 11, and is not inconsistent with any other case, except where, as in Colorado, the state statute requires a formal discovery shaft. If this be so, there is no insuperable objection to the evidence that the plaintiff's claims were validly located and in force when it was attempted to locate the Abraham; and hence that the latter location never had any effect. Even if the abandonment of the plaintiff's discovery as of the date of the location of the Ute May 18, 1907, worked an abandonment of the entire claim, this would not operate to validate the Abraham which was located before that abandonment, and when the ground was not open to location. It is true that an abandonment of the part of the claim which includes the discovery is evidence of an intent to abandon the entire claim, but, when the vein had been discovered on the remainder, it will not necessarily have that effect; and as to such remainder it will be a question of intent. When the evidence shows, as in this case, that the failure to file an adverse claim was due to ignorance of the application for patent, the intent to abandon the remainder cannot properly be inferred.

With respect to the Copper Belt No. 2, I think the evidence justifies the conclusion that the original discovery was at a point within what was afterwards located as the Abraham and excluded from the Winnifred.

The further objection that, when the Copper Belt claims were located, the ground was not open to location because of the existence of the Panama claim, is sufficiently answered by the suggestion that the evidence fails to show a valid location of the Panama. Smith v. Newell (C. C.) 86 Fed. 56.

The contention is also made that, because the plaintiff failed to affirmatively show the performance of assessment work for its claim for the year 1908, it must be denied relief. A failure to perform the required annual labor does not in and of itself work a forfeiture. It only permits a relocation. As the Abraham claim was located February 25, 1906, it cannot be considered a relocation of the plaintiff's claims based on the failure to perform the annual labor for 1908. The performance of such annual labor was irrelevant here and evidence thereof was properly omitted.

It follows that a decree must go for the plaintiff for that part of its claims in conflict with the Abraham lode.