[No. 3907.]

BEALS v. CONE ET AL.

| | |
|---|---|
| 27 | 473 |
| 28 | 180 |
| e29 | 383 |
| f29 | 389 |
| e29 | 416 |
| f29 | 417 |
| 27 | 473 |
| 31 | 128 |
| 27 | 473 |
| 32 | 46 |
| 27 | 473 |
| 33 | 415 |
| d19a | 412 |
| f19a | 440 |
| 27 | 473 |
| 20a | 86 |
| 20a | 483 |
| 27 | 473 |
| f36 | 386 |
| f37 | 28 |

1. RES JUDICATA—PARTIES.

In order to constitute a judgment in one case *res judicata* in another, it must appear that the quality or capacity of the parties to each is the same.

2. SAME—MINING CLAIMS.

A judgment of the land department of the general government cancelling the entry of a mining claim, upon protest filed, on the ground that no discovery of mineral had been made and that the required work had not been performed, in no manner settled the rights of the parties to the proceeding to the land in controversy, and in a subsequent adverse suit by the protestor in the former proceeding, as owner of a conflicting claim against the application for patent upon a re-entry of the same claim by the party whose entry had been cancelled, the judgment of the land department cancelling the entry cannot be pleaded as *res judicata* as the parties do not appear in the same capacity in the two proceedings.

3. ESTOPPEL—PLEADING.

In order to sufficiently plead an estoppel *in pais* based upon statements made by the party against whom the estoppel is claimed, it must be averred amongst other things that the statements relied upon to constitute the estoppel were made with the intention that they should be acted upon.

4. MINING CLAIMS—ADVERSE SUITS—CANCELLATION OF ENTRY—EVIDENCE.

In an adverse suit between the owners of conflicting mining claims where the principal issue was as to which of the conflicting claims

mineral was first discovered upon, a judgment of the land depart-
ment holding for cancellation a former entry of one of the claims,
upon protest, on the ground that no discovery of mineral had been
made, is not admissible in evidence to establish that fact in support
of the adverse claim.

5. SAME.

A judgment of the land department rejecting an application for patent
and nothing more, leaves the applicant with the same rights as if
no application had been made.

6. MINING CLAIMS—DISCOVERY OF MINERAL.

The validity of the location of a mining claim depends primarily upon
the discovery of a vein or lode within its limits and no rights are
acquired by location until such discovery.  Other necessary steps
required to perfect and keep alive a valid location are imperative,
only, as against the rights of third persons, and if not taken within
the time required by law, but are complied with before the rights
of third parties intervene, they relate back to the date of location,
but not so with the discovery, for upon that act depends the life of
the location, and from the time of the discovery only would a loca-
tion be valid.

7. SAME—ADVERSE SUITS—EVIDENCE.

In an adverse suit between conflicting mining claims where the evidence
was undisputed that no discovery of mineral was made on the ad-
verse claim for about two years after the original location at which
time a relocation was made and certificate filed, the original loca-
tion certificate was properly excluded from evidence as the right of
the adverse claimant dated only from the relocation.

8. MINING CLAIMS—VEINS—INSTRUCTIONS.

A mineral bearing vein, within the meaning of the law, is a continuous
body of mineral bearing rock in place in the general mass of the
surrounding formation, the boundaries of which may or may not be
ascertained and visible, and an instruction that so defines a vein is
correct in a case where the facts justify it.

9. MINING CLAIMS—BOUNDARIES—CORNER POSTS.

Under the statute providing that where one or more of the posts which
must be erected to mark the surface boundaries of a mining claim,
fall by right upon precipitious ground where the proper placing of
it is impracticable or dangerous, it shall be legal to place it at the
nearest practicable point suitably marked to designate the proper
place, the mere fact that the proper place falls upon a railroad em-
bankment twelve or fifteen feet in height will not excuse a failure
to place the post at its proper place unless it would have been in
such close proximity to the rails as to be interfered with by passage
of trains.

10. APPELLATE PRACTICE—INSTRUCTIONS—EXCEPTIONS.

Unless in an appropriate way an exception to an instruction is made in

the court below, so that its attention is directed to the error of law complained of, the instruction will not be reviewed by the appellate court.    The appellate court will not review instructions which the trial court was given no opportunity to correct.

**11. SAME.**

An exception to instructions in the form: " To the giving of which instructions, and each and every thereof the plaintiff by his counsel then and there duly excepted," is equivalent to saving an exception to each instruction separately, but it will not avail as against an instruction that contains a correct statement of the law, because it fails to point out that part of the instruction which is incorrect from that which is correct.

**12. PRACTICE—JURIES—TALESMEN—WAIVER.**

Where the district court of a county is conducted in two divisions and the regular panel of jurors is divided, part being assigned to each division, and a party to a civil action in one division demands a jury of twelve, and the number of regular jurors in attendance on that division not being sufficient, the jury is made up from talesmen summoned by open venire, after trial and verdict it is too late for the party to raise the objection for the first time to filling up the jury from talesmen instead of calling the regular jurors from the other division, although the jurors in the other division were not at the time employed or needed in that division.

**13. SAME.**

Where the district court of a county is conducted in two divisions, the apportionment of the regular panel of jurors between the two divisions is entirely in the control of the judges and their action in making such apportionment will not be inquired into on appeal.

**14. PRACTICE—JURIES—TALESMEN—MOTION FOR NEW TRIAL.**

On motion for new trial a showing that the sheriff received notice that a special venire for jurors would be issued before it was issued, without disclosing from what source the notice came, and that certain persons some of whom held commissions as deputies under the sheriff were requested by the sheriff to be at his office on the morning the venire issued, who were summoned as talesmen and called into the jury box, but which failed to show that the sheriff or any one connected with his office, or that any one of the persons summoned was biased against the party making the motion or in favor of his adversary, or took any steps directly or indirectly to influence the jurors selected to try the case, fails to show that the jury was packed in the interest of the adverse party and states no cause for a new trial.

**15. PRACTICE—EVIDENCE—VIEWING PREMISES—INSTRUCTIONS.**

In an adverse suit between two conflicting mining claims where on view of the premises by the jury one of the guides who had surveyed the premises pointed out to the jurors the place where he claimed the

corner stake in dispute would fall, by right, the error and prejudice was removed by the court directing the jury to disregard what was said by the guide and to consider nothing except the evidence introduced in court and upon the trial.

16. PRACTICE—MISCONDUCT OF JURY—SEPARATION.

The mere separation of a jury, after the submission of a cause, is not *per se* sufficient to set aside the verdict and grant a new trial. It must appear that by reason of such separation, there is a strong probability that the jury has been tampered with, or improperly influenced to return the verdict sought to be set aside.

17. MINING CLAIMS—ADVERSE SUITS—VIEW BY JURY.

In an adverse suit where the jury was sent to view the premises of the conflicting claims, in the absence of a request directing the jury in regard to how the examination should be conducted, a party cannot complain that jurors exercised their discretion as to what part of the premises they would examine, and the fact that all the jurors did not go down the shafts would not vitiate the verdict.

18. APPELLATE PRACTICE—VERDICT OF JURY—EVIDENCE.

Where there is evidence to sustain every material issue tendered, the appellate court will not interfere with the verdict of the jury. The question as to whether or not some or all of the testimony is false is purely within the province of the jury.

19. NEW TRIALS—NEWLY DISCOVERED EVIDENCE.

Newly discovered evidence which only goes to impeach the credit or character of a witness, is not sufficient ground for a new trial, unless it is clear that such impeachment would have resulted in a different verdict.

20. MINING CLAIMS — DISCOVERY OF MINERAL — EVIDENCE — REBUTTAL.

In an adverse suit between two conflicting mining claims on the issue as to whether mineral had been discovered on the adverse claim, where the plaintiff introduced evidence in chief tending to prove the existence of mineral in the discovery shaft, to meet which defendant introduced samples from the shaft which he claimed contained no mineral, plaintiff could not introduce in rebuttal other samples from the shaft containing mineral. Such evidence could properly have been admitted in chief but not in rebuttal.

21. PRACTICE—INSTRUCTIONS.

Where three consecutively numbered instructions refer to the same subject-matter and the second refers to the preceding by beginning with these words, " Upon that point the court instructs," and the third began, " In this connection the court instructs," the three were sufficiently connected to indicate to the jury that they were to be taken together and read as a whole, and where the three read together properly expressed the law upon the subject they were not objectionable.

22. MINING CLAIMS—DISCOVERY SHAFTS—VEINS—STATUTORY CON-
STRUCTION.

Section 2320, U. S. Rev. Stats., provides that a location of a mining claim
shall not be valid until a mineral bearing vein has been discovered.
Section 3152, Mills' Ann. Stats., provides that the discovery shaft shall
disclose a well defined crevice at a depth of at least ten feet. If the
state statute is legal the discovery shaft must expose the vein upon
which the location is based, and the discovery of some other vein
within the limits of the claim cannot supply the absence of the one
required to be exposed in the discovery shaft.

23. SAME.

" Crevice," as employed in the statute (sec. 3152, Mills' Ann. Stats.), re-
lative to a discovery shaft means a mineral bearing vein.

24. MINING CLAIMS—ASSESSMENT WORK—VERDICT—PRACTICE.

Upon the issue as to whether the required annual assessment work has
been done upon a mining claim the verdict of the jury upon conflict-
ing evidence will not be disturbed on appeal where there was evi-
dence to support the verdict.

25. MINING CLAIMS—ASSESSMENT WORK—FORFEITURE—BURDEN OF
PROOF.

Where a mining claim has been legally located a failure to do the re-
quired annual assessment work will not result in a forfeiture of the
claim except as to a subsequent location made after the expiration
of the time for performing the work, and a party seeking to initiate
a claim to mining premises already legally located on the ground of
failure of the former locator to do his assessment work has the bur-
den of proof to show that the work was not performed.

### Appeal from the District Court of El Paso County.

ACTION by appellant, as plaintiff in the court below, as the
owner of the Tecumseh lode, in support of his adverse against
the application of appellees, as defendants, for patent to that
portion of the Ophir lode in conflict with the Tecumseh.
From a judgment in favor of defendants, plaintiff appeals.
The facts and other data necessary to an understanding of
the questions involved and decided, will be found in the opin-
ion, in connection with the discussion of the errors assigned
by appellant.

Mr. H. B. JOHNSON and Mr. RALPH W. SMITH, for ap-
pellant.

Messrs. HALL, BRYANT, LEE & BABBITT, and Mr. CHARLES S. THOMAS, for appellees.

MR. JUSTICE GABBERT delivered the opinion of the court.

By way of replication to the answer and counterclaim of appellees, appellant interposed (1) what purported to be a plea of *res judicata;* and (2) a plea of estoppel *in pais.*

By the first, it was averred, in effect, that on February 10, 1893, appellees entered the Ophir lode; that thereafter appellant and others filed a protest against such entry, by which it was alleged that no discovery of mineral thereon had been made; that a hearing on such protest was had, which resulted in a finding by the land department of the general government, that no discovery had been made on the Ophir; that the discovery shaft thereon was but twenty-five feet in depth, on the 11th day of October, 1893; that the sinking of such shaft was the only work performed by appellees on the Ophir prior to that date, and that on these findings a judgment was entered, cancelling the entry.

By the second plea, it was averred that the appellee, J. J. Cone, at the hearing above referred to, testified, in substance, that the discovery shaft on the Ophir was but twenty-five feet deep on the 11th day of October, 1893; that no vein had been disclosed thereon at that time, and that no work had been performed on the claim in the year 1893; that by reason of such testimony, appellant and others interested with him were induced to expend a large sum of money in exploring for mineral in the ground in conflict, between the Tecumseh and Ophir lodes, and in working and developing the former; that appellees knew that such expenditure was being made on the faith of the truth of the above statements of appellee Cone, but never contradicted such statements; that if appellees performed any work on the Ophir, in the year 1893 prior to the 11th day of October of that year, sunk the shaft to a greater depth than twenty-five feet, or discovered a vein in such shaft, appellant and those working under him were

ignorant of such facts. To each of these pleas, a general demurrer was interposed, and sustained. This ruling of the trial court is assigned as error.

It will be borne in mind that the application of appellees for patent to the ground in controversy adversed by appellant, is in no manner based upon the proceedings resulting in an entry which was cancelled as above pleaded, nor do they in any manner base their rights to the ground in controversy by virtue of such application, or the entry thereunder which was afterwards annulled. The claim of counsel for appellant is, that the judgment of the land department is *res judicata* of the facts established in the proceeding instituted by appellant and others, protesting against such entry. In order to constitute a judgment in one action *res judicata* in another, it must appear that the quality of the parties to each is the same. *Slocum v. DeLizardi*, 99 Am. Dec. 740; *A., T. & S. F. Ry. Co. v. Commissioners*, 12 Kan. 127; Freeman on Judgments, § 252; Bouvier's Law Dic., title *Res Judicata; Benz v. Hines*, 3 Kan. 390; *Lower Latham D. Co. v. Louden I. C. Co., ante*, p. 267.

The judgment rendered by the land department in the matter of the former entry of the land in controversy in no manner settled the rights of the parties to that proceeding to such lands. It merely held that appellees were not entitled to be vested with the fee therein from the general government. The protestants were not parties in interest, because they made no claim to the subject-matter of the controversy, and with respect to that proceeding, occupied the position of *amici curiæ*, with the right of showing that appellees had not complied with the requirements of the law relative to obtaining title from the government for mineral lands at the time of their former application. Week's Mineral Lands, § 96; *In re Mt. Pleasant Mine*, Copp's Mineral Lands, 204.

It is manifest, therefore, that the quality or capacity in which appellant acted in the protest proceedings pleaded, is

entirely different from the capacity in which he appears in the present action.

In order to sufficiently plead án estoppel *in pais* based upon statements, it must be averred, among other things, that the statement relied upon to constitute such estoppel was made with the intention that it should be acted upon. *Patterson v. Hitchcock*, 3 Colo. 533; *People v. Brown*, 67 Ill. 435; *Martin v. Zellerbach*, 38 Cal. 300.

In the replication interposed by appellant on this subject, there is no averment that the statements attributed to the appellee Cone were made by him with the intention of deceiving or misleading appellant or those acting with him, nor is there any allegation that supplies the absence of a direct one to this effect. The demurrer to each plea in the replication was properly sustained.

Numerous errors are assigned on the rulings of the trial court with respect to the admissibility of evidence, some of which are new and important. On the trial, appellant offered in evidence the decisions of the department of the interior rendered in the matter of the protest against the former application of appellees for patent on the Ophir lode, together with a notice directed to them, that a hearing had been ordered upon such protest. Each of these was excluded. These decisions were rendered in the proceedings mentioned in the plea of *res judicata*, to which reference has already been made. The principal contention between the parties was, upon which of the conflicting lode claims was a discovery of mineral first made? The department, in the protest proceedings, found from the evidence submitted, that no discovery of mineral had been made upon the Ophir on the 11th day of October, 1893. Counsel for appellant contend that these decisions were material evidence, because this finding was conclusive upon that question, and that appellees were precluded from showing a discovery on the Ophir prior to that date. A sufficient answer to this proposition should be that as the judgment rendered in the protest proceedings was not *res judicata* between the parties to this

action, that no fact found by the department in those proceedings would be competent to contradict or establish any fact directly in issue in this. A consideration of the nature of an application for patent to mineral lands which is rejected, and the result of the judgment of the department of the interior which merely holds that the applicant is not entitled to patent, and where the rights of others to the lands embraced in the application are not determined, will demonstrate that no finding of fact made by the department in such case is either conclusive or admissible in evidence in another action, in which the applicant bases no rights to the ground in controversy by virtue of such proceedings. Under the law regulating the issuance of patents to mineral lands, and the rules of the department, certain facts must be established. If not, the application is dismissed. Such a judgment is, in effect, one of nonsuit, and therefore not one upon the merits. *Iles v. D. & R. G. Ry. Co.*, 25 Colo. 19.

It is no more than a conclusion, that in that particular application the applicant has failed to establish the necessary facts to entitle him to a patent the same as a judgment of nonsuit would be directed in an action at law, where the plaintiff had failed to establish the facts upon which he relied to entitle him to the judgment demanded. The fact that a protest had been filed does not change the rule, when, as in this case, the rights of the protestants were neither involved nor adjudicated. Many authorities are cited by counsel for appellant, in which it has been held that the findings of fact made by the department of the interior are conclusive upon the courts. In all these cases the question involved was the authority of the courts to redetermine questions of fact already determined by the department, where parties either based their right upon a muniment of title issued by the government, which had been annulled, or were attempting to show that the facts upon which a patent had been issued were different from those necessarily established before the department upon which it based its action. This is not the case at bar. Appellees are not asserting any

rights to the premises in dispute by virtue of the cancelled receiver's receipt, by attempting to show that the findings of the department, that no discovery of mineral had been made upon the Ophir at the time of their former application, were not justified, but have instituted another proceeding to procure patent, which may be likened to a new action after having suffered judgment of nonsuit; and hence, the authorities cited are not in point.

Our attention has not been directed to any case where the question here involved has been directly decided, but we think the rulings of the department of the interior fully sustain our conclusion, that the cancellation of a mineral entry only is not *res judicata* on another application for patent, and that the facts found, upon which such action is based, are not admissible to support an adverse claim against a second application for the same premises. In *Branagan v. Dulaney*, 2 L. D. 744, Secretary Teller, in speaking of the rights of the locator of a mining claim, says :

" The government gives the possessor of a lode his choice, to hold it without patent, or to take patent. If he attempts to take a patent, and finds that he is met with obstacles not anticipated, he may relinquish his attempt to secure patent, and continue to hold by right of possession. Thus, when the applicant to enter a lode claim is met with an adverse claim, he may, if he chooses so to do, avoid a legal conflict by dismissing his application for a patent, and rely on his title by possession given him by the local laws and customs, and a compliance therewith."

In the case of the *Clipper Mining Company*, reported in 22 L. D. 527, it appears that certain parties applied for a patent on a placer claim, against which a protest was filed, upon the theory that the land embraced in the application was not placer. This protest was sustained, the department finding, as a matter of fact, that the ground was not subject to location as a placer mining claim. Afterwards lode claims were located within the limits of the placer, upon which applications for patent were made. The owners of the placer

filed an adverse claim against the issuance of patent to the lode claims, in which they set up their old placer title; the applicants moved to dismiss, because a judgment had already been rendered by the land department, that the ground claimed as a placer could not be held as such, and the department refused to dismiss the adverse of the placer claimants, which was affirmed by the secretary of the interior. While the judgment of the latter seems to have been based largely upon the proposition that the adverse claim ousted the department of jurisdiction, the secretary, in his opinion, said:

"It is contended by counsel for applicant that the judgment in the Searl placer was a complete and final adjudication; that the land embraced therein was not placer ground, and could not be entered as such; hence, the adverse claim filed by Searl et al. based, as it is, upon land for which application for patent has been rejected, ought not to be accepted by the department as a legal or proper adverse claim, and its application should be received and patent issue, notwithstanding. * * * The judgment of the department in the Searl placer case went only to the extent of rejecting the application for patent; the department did not assume to declare the location of the placer void, as contended by counsel, nor did the judgment affect the possessory rights of the contestant to it."

In the case of *McGowan et al. v. The Alps Cons. M. Co.*, 23 L. D. 113, the secretary of the interior, in speaking of the effect of the cancellation of a mineral entry, said:

"The fact that the entry was cancelled would not, of itself, render the ground subject to relocation. The original location of the lode was not affected by the cancellation, even though it had been regular, and the owner could still hold it under its possessory right, so long as there was a compliance with the requirements of the law."

The fair inference from these rulings is, that the judgment of the department, rejecting an application for patent and

nothing more, leaves the applicant with the same rights as though no application had ever been made.

The trial court excluded appellant's original certificate of location on the Tecumseh, which bore date May 3, 1892; was recorded May 6, of the same year, and claimed a discovery on April 18, preceding. The evidence was undisputed, that no discovery of mineral in place, such as the law contemplates, was made upon the Tecumseh until April 20, 1894, at which time appellant relocated the premises and filed a certificate of location. His counsel contend that the original location certificate should have been admitted, because a discovery having been made in the spring of 1894, it would relate back to the date of the original location. The validity of the location of a mining claim is made to depend primarily upon the discovery of a vein or lode within its limits. Sec. 2320, U. S. Rev. Stats. Until such discovery, no rights are acquired by location. The other requisites which must be observed in order to perfect and keep alive a valid location, are not imperative, except as against the rights of third persons. If the necessary steps outside of discovery are not taken within the time required by law, but are complied with before the rights of third parties intervene, they relate back to the date of location, but not so with discovery; for it is upon that act that the very life of a mineral location depends, and from the time of such discovery only would the location be valid, provided, of course, that others had not previously acquired rights therein. *N. Noonday M. C. v. Orient M. C.*, 6 Sawyer, 299.

Under this rule the original certificate of the Tecumseh was properly excluded, for the rights of appellant to the disputed premises only dated from April 20, 1894.

Other errors assigned upon the admissibility of evidence are argued, but as they are manifestly untenable they will not be noticed in detail.

Errors are assigned upon the instructions given by the court, and also upon certain instructions requested by counsel for appellant, and refused. Those relating to the instruc-

tions given will be first considered. The correctness of the charge of the court, defining veins, is challenged. On this subject the jury was advised, in effect, that a vein is a continuous body of mineral bearing rock, containing precious metals in appreciable quantities, with defined boundaries in the general mass of the mountain; that, theoretically, it must have two walls, but that it was not absolutely necessary that they be disclosed; that their presence would be strong evidence of the existence of a vein, but that the boundaries of the vein might be ascertained by tests, which would distinguish the rock or other substance carrying precious minerals from the rock inclosing it, which did not. The criticism of the foregoing is, that the definition of a vein as therein given, was not applicable to the facts, and authorized the boundaries of a vein to be established by assays alone. On behalf of appellant it is claimed there were three well-defined fissures of the Tecumseh disclosed in as many different shafts. It is conceded that on the Ophir a vein with defined boundaries was disclosed in the discovery shaft at a depth of about thirty-four feet. It was located prior to the Tecumseh. The important question upon which the rights of the parties hinged was, upon which claim was the first discovery made? In determining this fact, it was impossible to ascertain whether the vein of the Ophir was first disclosed, near the bottom of the discovery shaft, or at a point about twenty feet from the surface. Witnesses for appellees had testified to the existence of the vein at this latter point, or to conditions which, if believed by the jury, from which its existence at this locality in the shaft might be inferred, although it appears that defined boundaries of the vein were not visible at this place. Many definitions of veins have been given, varying according to the facts under consideration. The term is not susceptible of an arbitrary definition applicable to every case. It must be controlled in a measure, at least, by the conditions of locality and deposit. *Cheesman v. Shreve,* 40 Fed. Rep. 787. The distinguishing feature between a vein and the formation inclosing it may be visible; it must

have boundaries, but it is not necessary that they be seen; their existence may be determined by assay and analysis. *Cheesman v. Shreve*, 40 Fed. Rep. 787 ; *Hyman v. Wheeler*, 29 Fed. Rep. 347 ; *Iron Silver M. Co. v. Cheesman*, 116 U. S. 529.

The controlling characteristic of a vein is a continuous body of mineral bearing rock in place, in the general mass of the surrounding formation.   If it possess these requisites, and carries mineral in appreciable quantities, it is a mineral bearing vein, within the meaning of the law, even though its boundaries may not have been ascertained.   The instructions of the trial court recognized the different conditions which should be considered in establishing the existence of a vein applicable alike to the veins claimed to be disclosed upon the respective mining claims.   On the property of appellant, it was asserted that the walls of the vein were visible ; on that of appellees, the vein was claimed to have been discovered about twenty feet from the surface, although at that point neither wall was disclosed ; so that, taking into consideration the conditions which the respective parties asserted, and upon which they relied to establish the existence of a vein upon the respective properties, the charge of the court on this subject was correct.

Appellant contends that certain instructions requested upon his behalf, which were to the effect that the discovery shaft upon a mining claim must show a well defined crevice, should have been given.   This contention is based upon the proposition that the vein of the discovery shaft must be plainly visible.   From what we have already said, regarding the definition of "veins," and how their existence may be determined, it is clear that the instructions requested, which sought to inject into the case the theory that a vein could not be said to be discovered unless its boundaries were disclosed, were properly refused.

The southwest corner post of the Tecumseh was not placed where it fell by right, because, it was claimed, that point was impracticable.   The evidence establishes that this corner fell upon a railroad embankment.   It is claimed by

counsel for appellant, that the court instructed the jury to the effect that unless it was found from the evidence that the true southwest corner of the Tecumseh fell upon precipitous ground, and within the rails of the railroad occupying such embankment, or so near to one or the other of them, that the erection of a post at that point would be interfered with by the passage of trains, that it was the duty of appellant to set his post at the true corner.

The instruction referred to is not happily worded, but it must be read as a whole, and also in connection with the one immediately following, from which it is apparent that the court directed the jury that appellant was required to place the southwest corner post of the Tecumseh lode at its true point, unless the evidence established that such point fell where it was impracticable to maintain it. Aside from these considerations, appellant is not in a position to complain of this instruction. It does not appear that the erection of a stake at the true corner would have been interfered with by the passage of trains. The most that can be said is, that the true corner fell upon a railroad embankment twelve or fifteen feet in height. The statute provides that when one or more of the posts which must be erected for the purpose of marking the surface boundaries of a mining claim "fall by right upon precipitous ground, where the proper placing of it is impracticable, or dangerous to life or limb, it shall be legal and valid to place any such post at the nearest practicable point, suitably marked, to designate the proper place." Sec. 3153, 2 Mills' Ann. Stats. These provisions concerning the placing of witness stakes cannot be invoked, when the setting of a stake at the true corner is merely difficult or inconvenient. *Croesus Co. v. Colo. Co.*, 19 Fed. Rep. 78; *Taylor v. Parenteau*, 23 Colo. 368.

It certainly was not dangerous to life or limb to set this post at its true point upon a railroad enbankment, and it does not appear that to have done so was impracticable ; so that if the instruction was susceptible of the construction claimed, it was corect, in that the post should have been erected at

its true point, unless that point was in such proximity to the rails that it would be interfered with by the passage of trains. In this connection, we notice another point, although we do not wish to be understood as definitely deciding it. The statute above quoted provides that where the conditions exist which authorize the placing of a boundary post at a place other than where, by right, it belongs, that it shall be "suitably marked to designate the proper place." This requirement is for the purpose of designating where the true point or corner is, which is evidenced by such post, and that it shall be so marked as to impart this information. In this case, it appears that the only marks upon the southwest corner post of the Tecumseh were, "W. C. 4–9005." These marks certainly did not indicate by either course or distance where the true southwest corner of the claim would be found.

At the conclusion of the introduction of the evidence, the jury was directed to visit the premises in dispute. Objection is made to the instruction of the court to the jury on this subject, in that it was to the effect that the object of this view was to enable a better understanding and comprehension of the testimony of the witnesses respecting the issues involved, but that the verdict must be based upon the evidence introduced before the court. The contention of counsel for appellant is, that the information gained by the jury in visiting the premises should have been treated by that body as substantive evidence. It is well settled, by numerous decisions of this court, that although instructions need not be preserved by a bill of exceptions, yet, unless in an appropriate way an exception to an instruction is made in the court below, so that its attention is directed to the error of law complained of, this court will not review instructions which the trial court was given no opportunity to correct. *Keith v. Wells*, 14 Colo. 321; *Edwards v. Smith*, 16 Colo. 529; *Supreme Lodge K. of H. v. Davis*, 26 Colo. 252; 58 Pac. Rep. 595; *D. & R. G. Ry. v. Ryan*, 17 Colo. 98.

At the conclusion of the instructions given by the court of its own motion, which embraced the one under consideration,

an exception in this form was preserved: "To the giving of which instructions, and to each and every thereof, the plaintiff by his counsel then and there duly excepted." This is equivalent to saving an exception to each instruction separately, but it cannot avail as against any instruction to which it is directed, which contains a correct statement of the law, because it is insufficient to point out that which is incorrect from that which is correct.

Without attempting to state fully the instruction which contains the direction of which appellant complains, it is sufficient to say, that it embraces other distinct statements of law, which are manifestly correct. Therefore, the exception noted was wholly insufficient to present the question for review, which it is now sought to have us pass upon and determine.

Other objections are urged to the instructions given, which, from the views expressed, we are of the opinion are not well taken, and we do not deem it necessary to notice them at length. Some of the instructions requested by appellant, and refused, it is apparent from what we have already said, were not correct statements of the law, and as to the remainder, they were embodied in those given.

The remaining questions presented by counsel for appellant were raised upon a motion for a new trial, and may be considered under the following heads: Irregularity in summoning talesmen; misconduct of officers in summoning these talesmen; misconduct of guide selected by appellees; misconduct of jury; failure of jury to properly view premises in dispute; insufficiency of evidence to support verdict; newly discovered evidence.

The district court of El Paso county is conducted under two divisions, in one of which civil causes are tried, and in the other criminal. It is the custom to assign certain jurors of the regular panel to each division. When this cause was called for trial, appellees demanded a jury of twelve. The number of jurors in attendance on the division in which the case was pending not being sufficient from which to select that number, the court, instead of calling jurors from the

criminal division, directed a certain number to be summoned by open venire. From the persons thus summoned, and those of the regular panel in attendance on the division in which this cause was tried, the jury was selected. After verdict, objection to the action of the court in summoning talesmen was made for the first time, when it was sought to show that the jurors in attendance on the criminal division were not employed or needed when the jury in this case was empaneled. Appellant is not in a position to raise any question regarding the action of the court in directing the issuance of an open venire. The exercise of reasonable diligence upon his part would have disclosed the apportionment of the jurors between the two divisions of the court, and if the conditions were such that he could have properly insisted on having jurors called from the division engaged in the trial of criminal causes, who were then not actually upon any jury, before talesmen could be placed in the box, it was his duty to call the attention of the court to this fact. Having failed to do so, any error in this respect is waived. It is not necessary, however, to place the decision of this question upon this ground alone. The apportionment of the regular panel between the two divisions of the court was entirely in the control of the judges; their action in this respect cannot be interfered with; they make the apportionment in view of the expected need of jurors in the different divisions; if it turns out that they were mistaken in their action, it will not be inquired into for the purpose of ascertaining whether a proper apportionment was made or not. It was evident that a jury of twelve could not be selected from the regular panel attending the division in which this cause was tried; the judge directed an open venire for a sufficient number for this purpose. This, in the exercise of his discretion as to how and when talesmen may be summoned, he had the clear right to do. 3 Mills' Ann. Stats. sec. 2609; Laws, 1891, sec. 4, p. 250.

It is claimed that the sheriff packed the jury in this case, in the interest of appellees. This charge is based substantially upon these facts: It appears that the sheriff, or his

office, received notice that a special venire for jurors would be issued; from what source this information was obtained is not disclosed; that persons, part of whom hold commissions as deputies, were requested by the sheriff, or his official employés, to be at the sheriff's office on the morning the venire issued, but prior to its issuance, who were afterwards summoned as talesmen, and called into the jury box. One of these deputies, not selected as a juror, was afterwards detailed as the bailiff, specially in charge of the jury in this case. There is not a word of evidence that the sheriff or any one connected with his office, or that either of the persons summoned as talesmen, was biased against the appellant, or took any steps, directly or indirectly, to influence the jury selected to try this cause. In our opinion, there is not the slightest reason to impugn the integrity of the sheriff, or those acting under him, in this matter.

While the jury was engaged in viewing the disputed premises, the guide selected by the appellees pointed out to the jurors the place where, he claimed, the southwest corner stake of the Tecumseh would fall, by right. It seems that he had previously made a survey of the premises. This action on the part of the guide was wrong, and directly contrary to the instructions of the court; but the attention of the court was called to this matter previous to argument, whereupon the jury was directed to disregard what was said by the guide regarding the proper place for this stake, and told that upon this point nothing could be considered except the evidence introduced in the court room, and upon the trial. This declaration of the trial judge was right, clear and emphatic, and we cannot assume that men who had taken a solemn oath to obey the instructions of the court would disregard this plain, authoritative statement regarding their duty.

The misconduct of the jury is based upon the fact that one of the jurors, after the cause was submitted, was separated from his fellows. An affidavit of this juror and the bailiff fully explains the reason of one separation, but it is

insisted that this is not the one established by affidavits filed in support of this ground of the motion for a new trial. According to one of these affidavits, the juror was in a room by himself, and during that period some unknown person was standing in the door of this room, who, upon seeing the affiant, turned and walked away. Much stress is laid upon the fact that during these separations the juror was seen alone in company with the bailiff, who had originally been summoned as a talesman. The mere separation of a jury, after the submission of a cause, is not *per se* sufficient for setting aside the verdict and granting a new trial. It must appear that, by reason of such separation, there is a strong probability that the jury has been tampered with, or improperly influenced to return the verdict which is sought to be set aside. *Dozenback v. Raymer*, 13 Colo. 451.

There is nothing in the facts established by the affidavits that the jury or any member had been tampered with, or that any effort was made in this direction. Citizens who are required to render services in the determination of disputes between litigants, should not be charged with a disregard of their duty or their oath, nor will the courts assume that they have been guilty of such conduct, unless the facts upon which such a charge is based warrant that conclusion.

The facts upon which counsel for appellant rely in support of the claim that the jurors did not properly view the premises, are to the effect that all of the jurors did not go down the Tecumseh discovery shaft; that one of the bailiffs stated to the jurors that those who did not care to go down the shafts of either the Ophir or Tecumseh need not do so; that two of the jurors did not view or examine either shaft, and that only one went down the shaft of the Ophir. In suits involving the title to the right of possession of a mining claim, it is made the duty of the court, upon the application of either party, to send the jury in a body to view and inspect the premises in dispute. Each party may select a guide to be approved by the court, who shall be authorized to point out

such features as it is desirable that the jury should see. Sec. 188a, Mills' Code. In the case at bar, the jurors were not directed to examine any particular portion or feature of either claim. According to the directions of the court on this subject, that was left to their discretion. We are not prepared to say that a litigant in a mining suit may not have the right to have the jury specially directed regarding the examination, but no such request was made by appellant in this case; and therefore, while it may have been proper that the jurors should each have examined the shafts upon the respective properties, the appellant having failed to request the court to so direct, is not in a position to complain, because the jury in the exercise of its discretion, only examined such features as, in its judgment, after having heard the testimony, were desirable for the purpose of aiding a better understanding and application of the evidence.

It is also urged that the evidence is insufficient to support the verdict, because as to some of the issues there was no evidence to sustain them; and as to others, it was false and fabricated. We shall not attempt to give an abstract of the evidence upon which the jury determined the questions of fact involved in this case. It is sufficient to say that there is evidence tending to prove every material issue tendered by the appellees. Whether some or all of this evidence was false, was a matter purely within the province of the jury; the witnesses were present in court; their alleged inconsistent statements was a matter for the jury to consider in passing upon their credibility. In this condition of the record, we cannot disturb the findings of the jury.

The newly discovered evidence upon which appellant bases his right to a new trial, was evidence, so it is claimed, which would have impeached the credibility of one of the important witnesses of the appellees. It does not appear that if this witness had been impeached, it would have changed the result. There were other witnesses testifying to the same matters he did. Newly discovered evidence which only goes to impeach the credit or character of a witness, is not sufficient ground

for a new trial, except it is clear that such impeachment would have resulted in a different verdict.   *Christ v. People,* 3 Colo. 394.

The judgment of the district court is affirmed.

*Affirmed.*

### ON PETITION FOR REHEARING.

PER CURIAM.   The conclusion announced, that the plea of *res judicata* interposed by appellant was insufficient, and that the judgment pronounced by the Land Department in the protest proceedings therein referred to was not competent evidence, in no manner conflicts with the decision in *German Insurance Company v. Hayden,* 21 Colo. 127.   In that case the right of the appellees to recover depended upon the fact that the insured was vested with the title in fee to the land upon which improvements destroyed by fire were situate. At the time the contract of insurance was entered into the assured had obtained a receiver's receipt for these premises. Subsequently, and prior to the loss, this receipt was cancelled, and it was held that this action of the department was conclusive, that the character of title which the insured exacted should be vested in the insured, did not exist.   In the case at bar the appellees, when their entry was cancelled, fell back upon the possessory rights initiated by the steps which they alleged had been taken in locating the premises in dispute.   This they had a clear right to do, and therefore, in establishing the facts regarding these steps, they were not impeaching the judgment cancelling the receiver's receipt.

Another important element necessary to constitute an estoppel *in pais* is, that the party to whom the statement was made which it is sought to make the basis of an estoppel, was ignorant of the truth of the facts to which such statement relates.   *Patterson v. Hitchcock, supra.*

It does not appear from the plea interposed as an *estoppel in pais,* that appellant was ignorant on the subject of the existence or nonexistence of a vein in the Ophir shaft.   The

plea in question contains no direct averment upon this point, or any from which the inference could be fairly and reasonably deduced, that appellant had no knowledge as to what was or was not disclosed in the Ophir shaft, in the way of a vein. For this reason, it does not appear that he has been misled by the statements attributed to appellee Cone. For the same reason, it does not appear that the silence of Cone misled him to his injury.

For a better understanding of the reasons why the ruling of the trial court, in excluding appellant's original certificate of location on the Tecumseh, was correct, the following facts should be borne in mind: The location of the Tecumseh under the discovery alleged to have been made on April 20, 1894, was upon a discovery at an entirely different point from the discovery shaft upon which the original location was based. Under the new location a new discovery shaft was adopted. It became, in effect, an original location. The statute which permits amendatory or additional certificates to be filed provides that the filing of such a certificate shall not preclude the claimant under it from proving such title as he may have held under the original location certificate. Sec. 3160, Mills' Ann. Stats. For this reason the original certificate may, under certain conditions, be admissible. Such conditions, however, do not exist in the case at bar. Prior to the discovery alleged to have been made upon which the second location is based, no right to the premises in dispute was vested in appellant, which entitled him to hold the ground as against third parties, because no discovery of mineral had been made before that time. A location without a discovery carries with it no rights. *Upton v. Larkin*, 6 Pac. Rep. 66. The acts to establish a location which appellant had performed prior to the discovery in April, 1894, would have taken effect, in so far as they could have been utilized, as of the date of such discovery. *Erwin v. Perego*, 93 Fed. Rep. 608. Appellant, however, did not rely upon any of these acts, but filed a new location certificate, including ground the boundaries of which were different from that described in the original certificate.

This was a new location under a new and distinct discovery, and the act of filing a new certificate under this state of facts was a complete abandonment of all rights which may have attached to the steps taken under the original location. The appellees at all times relied upon a discovery claimed to have been made in the discovery shaft of the Ophir. Even if there was no mineral disclosed in this shaft at the time they filed their location certificate, the subsequent discovery which they claimed to have made in this shaft made this location valid, except as against intervening rights, from that date. *Erwin v. Perego, supra.* They never filed any other certificate, and the original certificate of the Ophir was, therefore, properly admitted.

On the trial below appellees offered in evidence samples of rock purporting to come from the discovery shaft of the Tecumseh, which they claimed did not contain mineral. In rebuttal, appellant produced a sample claimed to have been taken from a crevice in this shaft. This evidence was excluded on the ground that it was not rebuttal. " Rebutting evidence is defined to be that which is given to explain, repel, counteract, or disprove facts given in evidence by the adverse party. It is a general rule that anything may be given as rebutting evidence which is a direct reply to that produced on the other side." 19 Am. & Eng. Ency. Law, 1093. Appellant had offered evidence in chief tending to prove the existence of mineral in the discovery shaft of the Tecumseh. To meet this evidence appellees had introduced samples from this shaft. As against this evidence, the offer of appellant was not rebuttal. It was nothing more or less than evidence which would have tended to prove the existence of a vein in the Tecumseh shaft, and would properly have been admissible in chief, but was in no sense rebuttal, for it did not tend to prove that the samples received in evidence on behalf of appellees were, in fact, mineral bearing, or did not come from the Tecumseh.

In instructing the jury on the subject of marking the surface boundaries of a lode claim, the court, in instruction No. 17,

*inter alia*, stated : " Where in marking the surface boundaries of a claim, any one or more of such posts shall fall by right upon precipitous ground, where the proper placing of it is impracticable or dangerous to life or limb, it shall be legal and valid to place any such post at the nearest practicable point, suitably marked, to designate the proper place."

Immediately following this instruction, and upon this subject, the court further stated :

" 18. Upon that point the court instructs you that unless you find from the evidence, that the southwest corner of the Tecumseh claim fell upon precipitous ground, and within the lines of the rails of the Florence & Cripple Creek Railroad, or so near to one or the other of them, that the erection thereof would be interfered with by the passage of trains, and was, for that reason, impracticable, then you are instructed that it was the duty of the plaintiff to set his post at such corner. If, upon the other hand, you should believe that the proper place of such stake was within the lines of the rails of said road, then you are instructed that under the statute such witness corner shall be set at the nearest practicable point. Whether this was done, you are to determine, from the evidence in the case, and unless you should believe, in that event, that the said witness corner was set substantially at the nearest practicable point, the marking of said claim would be invalid."

" 19. In this connection the court instructs you that if you believe from the evidence that the southwest corner of the Tecumseh lode fell by right on the roadbed of the Florence & Cripple Creek Railroad, and that such point was precipitous ground, where the proper placing of such corner was impracticable, and that plaintiff placed such cornerstone at the nearest practicable point, suitably marked to designate the proper place, then such corner was sufficient and valid."

It will be observed that these instructions follow each other ; that 18 refers to the part of 17 above quoted, and that in 19 what is there stated on the subject is preceded by the statement " in this connection," so that while the instructions

are numbered, they are so intimately connected and refer one to the other, that the jury must have understood that they were to be read as a whole. When so read, the thought expressed by the trial court is to the effect that appellant was not excused from placing the southwest corner post of the Tecumseh lode at its true point, unless it appeared from the evidence that such point fell where it was impracticable to maintain it.

Counsel for appellant contend that under instructions given and refused, the jury was precluded from considering the admitted fact, that veins were exposed in two different shafts upon the Tecumseh, designated 2 and 3. What we said in the original main opinion on this subject is withdrawn. In considering this question, these facts must be borne in mind: Whether or not a mineral bearing vein was disclosed in the discovery shaft upon which the present location of the Tecumseh is based, was controverted. No location was made upon either of the discoveries in shafts 2 and 3. The proposition of counsel for appellant is, that if a well defined crevice, although not bearing mineral in appreciable quantities, is exposed in the discovery shaft, the claimant may rely upon discoveries in other shafts within the boundaries of his claim, which disclose the mineral necessary to constitute technical veins.

No question is raised regarding the validity of our statute relative to the location of mining claims. In order that there may be no mistake as to the position of counsel on this subject, we quote from their original brief, as follows:

"* * * If the discovery shaft contains a well defined crevice, thus giving all the appearance of a discovery, the claimant may rely upon other shafts within the boundaries · of the claim for his discovery of the mineral necessary to constitute technical veins. The state statute does not provide what the well defined crevice shall contain, while the act of congress makes no provision as to what shaft the vein required shall be in. Reading and applying the two statutes together, we submit that the well defined crevice must be in

the discovery shaft, and the mineral bearing vein may be found in some other shaft upon the claim."

And also from their reply brief, in support of their petition for a rehearing, the following:

" We come now to the question as to whether the entire right to a claim, in so far as the same depends upon a discovery of a well defined crevice (as required by the State statute) and the discovery of a vein (as required by the act of congress) is *wholly dependent* upon the discovery shaft. * * * "

" We have not questioned the validity of our state statute. It is not necessarily, when properly construed, in conflict with the act of congress. Both the state statute and the act of congress can be given effect, and they should be so construed as to accomplish this. * * * "

" We have not maintained that a discovery shaft can be altogether dispensed with. Neither have we maintained that when the state statute in regard to such crevice has not been literally complied with, we can go outside of the discovery shaft for the technical lode or vein, the discovery of which, within the limits of the claim, is required by the act of congress."

The statute of this state, which designates what shall be disclosed in the discovery shaft, provides that it shall disclose a well defined crevice at the depth of at least ten feet from the lowest part of the rim of such shaft, at the surface. Sec. 3152, Mills' Ann. Stats. It being conceded that the laws of this state relative to the requirements of a discovery shaft are valid, it appears to us that the proposition upon which counsel rely is not tenable. If, as stated, the state statute is legal, it necessarily follows that the discovery shaft must expose the vein upon which the location is based, or at least disclose one, and therefore the mere discovery of some other vein within the limits of the claim cannot supply the absence of the one required to be exposed in the discovery shaft. In other words, the proposition of counsel for appellant cannot be upheld, unless the state statute is de-

clared invalid, and the admission upon their part that it is not, relieves us from the necessity of determining the effect of discoveries in shafts 2 and 3 of the Tecumseh.

"Crevice," as employed in the statute relative to a discovery shaft, clearly means a mineral bearing vein. It was so held by this court in *Bryan v. McCaig*, 10 Colo. 309. The circuit court of the United States for the district of Colorado has adopted the same view. *Van Zandt v. Argentine Co.*, 8 Fed. Rep. 725; *Terrible Co. v. Argentine Co.*, 89 Fed. Rep. 583; *Cheesman v. Shreeve*, 40 Fed. Rep. 787.

Under these decisions, coupled with the admitted legality of the state statute, the fact that discoveries were made in shafts 2 and 3 upon which no locations were made, does not in any manner affect the validity of the Tecumseh.

It is asserted that the evidence is insufficient to establish the fact that the assessment for the year 1897 was performed on the Ophir. A witness on the part of appellees testified that he had extended a drift on the Ophir, on account of the assessment work for 1897, a distance of seven or eight feet; that this drift was worth $12 per foot. For this labor appellee appears to have paid the sum of $90. For additional work he paid for two days' work at the rate of $4 per day, and later, for further work, $18. This, in addition to paying for the powder, fuse, steel and candles that were used in working the assessment. There may have been some evidence to the effect that the work was not worth the amount paid, but this was a question for the jury to determine, and as it has been determined in favor of appellees, upon evidence sufficient to sustain it, the finding on this subject will not be disturbed.

On the subject of annual labor, the court, by instruction No. 24, directed the jury as follows: "Upon this point the court further instructs you that the law does not presume a forfeiture by the failure to perform annual labor, and the plaintiff claiming that the Ophir lode became forfeited for such reason, the burden of proving that the annual labor was not done thereon, is on the plaintiff, and unless he has shown

you, by a fair preponderance of the evidence, that the work was not done, you are to determine that question in favor of the defendants."

The objection urged to this instruction is, that it cast a burden upon the appellant which he was not required to assume. The evidence tended to establish that a valid location of the premises in dispute had been made by appellees. This location was prior to the only one under which appellant can base any claim. The act of congress (sec. 2324, Rev. Stat. U. S.) provides that a failure to perform the necessary annual work shall render a claim open to relocation, provided the original locators have not resumed work upon the claim after failure and before relocation. The fair construction of this provision is, that as between the locator and the general government, the failure to do the annual assessment work does not result in a forfeiture. In other words —it is not necessary to perform the annual labor except to protect the rights of the locator against parties seeking to initiate title to the same premises. As against such subsequent location, a *prima facie* case is made on the part of the original locator by showing a valid location. *Hammer v. Garfield M. Co.*, 130 U. S. 291.

To otherwise express our views, it might be said, that after a valid location, the title thus acquired remains so, whether the annual assessment work is performed or not, until forfeited or abandoned. *Renshaw v. Switzer*, 15 Mining Reporter, 345; 6 Mon. 464; 13 Pac. Rep. 127.

It is the location by the new claimant, and not the mere lapse of time which determines the right of the original locator. *Little Gunnell G. M. Co. v. Kimber*, 1 Morrison's Mining Reports, 536.

So that a party seeking to initiate a claim to mining premises already legally located must prove that the annual labor thereon has not been performed, in order to establish that the ground so located is subject to location. In so far, then, as the rights of appellant depended upon the failure of appellees to perform the assessment work for 1897, it was en-

cumbent upon him to establish this fact by a fair preponderance of the evidence, or, as the court stated, the burden of proof was upon him to show that the work for 1897 was not, in fact, performed.  *Hall v. Kearny*, 18 Colo. 505; *Johnson v. Young*, 18 Colo. 625; *Hammer v Garfield M. Co., supra.*

The petition for rehearing is denied.

*Petition denied.*