# DENNIS O'DONNELL, Appellant, v. JOHN H. GLENN ET AL., Respondents.

APPEAL.—There was no statement on appeal, or on motion for a new trial in the record, nor were the instructions of the court below made a part of the judgment roll by bill of exceptions or otherwise. *Held*, that the judgment roll alone could be reviewed.

MINES AND MINERAL LANDS—*Discovery shaft—Notice at same—Evidence.*—The defendants were permitted to introduce testimony, tending to prove that at the time of their location of the mining claim in dispute, they had discovered a vein within the claim, at a point other than the one they had selected for the establishment of their discovery shaft. The plaintiff objected that a location must be based upon a vein found in the discovery shaft, adopted and claimed as such. *Held*, that the statutes governing the location of a mine do not provide for a discovery shaft, or any notice thereat, and that any valid discovery of a vein, made prior to location, is sufficient; *also*, that the testimony was properly admitted.

SAME—*Stake as permanent monument—Affidavit to declaratory statement—Constitutionality of section 1477, division 5, Compiled Statutes.*—The affidavit to a declaratory statement of a mining claim contained the following description of the claim: "Beginning at a stake at the southeast corner, running west 1500 feet; thence north 600 feet; thence east 1500 feet; thence south 600 feet to the place of beginning." The portion of the declaratory statement not under oath contained the date of location of the claim, but the affidavit omitted it, and failed to refer to the date as given in the aforesaid portion of the statement. *Held*, that whether the stake mentioned in the affidavit was of such size, and so firmly planted in the ground as to come within the meaning of "a permanent monument," was a question of fact under appropriate instructions from the court, and that so far as that question was concerned, the declaratory statement was properly admitted in evidence to the jury (*Russell* v. *Chumasero*, 4 Mont. 317, cited); but that by reason of the fact that said declaratory statement failed to show the date of location under oath, it should not have been admitted in evidence. (*McBurney* v. *Berry*, 5 Mont. 309, cited.) *Held, also*, that under the Organic Act of the Territory, and the general statutes of the United States, the legislature of Montana had authority to require, as provided in section 1477, division 5, Compiled Statutes, that a declaratory statement to a mining claim shall be sworn to, and that said section is constitutional.

*Appeal from the District Court, Silver Bow County.*

## STATEMENT.

This was an action, brought in the District Court of Silver Bow County, by the plaintiff, Dennis O'Donnell, against the defendants, John Glenn, John B. Cameron, Sabina H. Hale, George F. Hale, Alfred W. Hale, and Michael McNamee, who had made application in the United States land office at Helena, Montana, for a patent to certain mining ground, located as the "Argonaut Lode," which was in conflict with a location known as the "Slap Jack Lode," under which O'Donnell claimed a por-

tion of the same ground. The plaintiff filed an adverse claim in the said land office, and then commenced the action aforesaid to determine the claims in controversy, under section 2326 of the United States Revised Statutes. The jury before whom the case was tried found for the defendants, and judgment being rendered accordingly, the plaintiff appealed.

*William Scallon*, for Appellant.

The appellant submits that a location must be based on what is found in the discovery shaft, adopted and claimed as such, and not elsewhere. (*Van Zandt* v. *Argentine Mining Co.* [Hallet, J.] 4 Mor. Min. Rep. 441; 2 McCrary, 159.) To say that a Colorado statute requires the sinking of a ten-foot shaft, and the discovery of a crevice, does not diminish the weight of this authority, for our statute requires the finding of a well-defined wall. The local statutes do not affect the point, and to refer to them is to beg the question, which implies the existence of two or more shafts, one of which may show a valid discovery, and the other not. The affidavit to the declaratory statement of the Argonaut location is clearly insufficient. The statement is unverified, and so is null and void, if the local act requiring the verification be valid. Until the act is declared invalid, the statement must be rejected. This would also necessitate a reversal, as the Argonaut location prevailed.

*Knowles & Forbis*, for Respondents.

The case must be heard upon the judgment roll. (*McIntyre* v. *Willis*, 20 Cal. 177.) Now the location is not of a vein or lode, but of a parallelogram of ground which must embrace one lode, and may embrace many. (U. S. Rev. Stats. § 2322, p. 425; *Gleeson* v. *Martin White M. Co.* 9 Mor. Min. Rep. 429.) A permanent monument may consist of a stake firmly planted in the ground. (*North Noonday M. Co.* v. *Orient M. Co.* 9 Mor. Min. Rep. 529, and of opinion 540; *Russell* v. *Chumasero*, 4 Mont. 309.) And it is a fact for the jury to determine whether or not the monument referred to in the record is sufficient to identify the claim (*North Noonday M. Co.* v. *Orient M. Co.* 9 Mor. Min. Rep. 540; *Russell* v. *Chumasero*, 4 Mont. 309); and, also,

whether the boundaries of a claim are so marked as to be readily traced is a question for a jury. (*Taylor* v. *Middleton*, 67 Cal. 656; *Anderson* v. *Black*, 70 Cal. 226.) The affidavit contains all that is required to be in a notice or declaratory statement under the laws of Montana. (*Hauswirth* v. *Butcher*, 4 Mont. 299; *McKeen* v. *Delancy's Lessee*, 5 Cranch, 22; *Panaud* v. *Jones*, 1 Cal. 488, 499, 500; *In the Matter of the Will of War-field*, 22 Cal. 51–71; 83 Am. Dec. 49.) This subject has been considered, so far, upon the view that the legislative assembly of Montana had power to provide that the location notice or record should be under oath. In the case of *Hoyt* v. *Russell*, 117 U. S. 401, the United States Supreme Court leaves this point open for further consideration. In the case of *Wenner* v. *McNulty*, 7 Mont. 30, a case decided by this court, such power was doubted. The title acquired by the location of a mining claim is acquired by purchase. There are only two ways by which title to land can be acquired, and one is by purchase, and the other by descent. (3 Wash. Real. Prop. 4th ed. p. 4.) It has been frequently held by this court that the title acquired by location was by grant and by purchase. (*Robertson* v. *Smith*, 1 Mont. 410; *Belk* v. *Meagher*, 3 Mont. 65; *Hauswirth* v. *Butcher*, 4 Mont. 299; *Russell* v. *Chumasero*, 4 Mont. 309; *Mantle* v. *Noyes*, 5 Mont. 274.) In the case of *Belk* v. *Meagher*, 104 U. S. 279, the title acquired to the possession is said to be by grant. (See, also, *Territory* v. *Lee*, 2 Mont. 124.) Laws which make additions to the requirements of Congress, as to the locations of mines, come within the restrictions in our Organic Act upon the powers of the legislative assembly of our Territory. (U. S. Rev. Stats. § 1857.) The adding such requirements to the laws of the United States, as that a discovery hole must be sunk ten feet, or that the record of location should be under oath, is interfering with the disposal of the mineral lands of the United States.

McConnell, C. J.—This is an action brought under section 2326 of the Revised Statutes of the United States, for the purpose of determining the right to the mining claim described in the appellant's complaint. There is no statement on appeal, nor statement on motion for a new trial, nor are the instructions

made a part of the judgment roll by bill of exceptions or otherwise. The case must be heard here upon the judgment roll, and the only controverted question presented by it is the admissibility of certain testimony, and of the declaratory statement offered by the respondents. The appellant claims the lode under the name of the "Slap Jack Lode," and the respondents under the name of the "Argonaut Lode."

1. The bill of exceptions shows that the defendants below were permitted, over the objections of the plaintiff, to introduce the testimony of a number of witnesses, tending to prove a discovery within their claim, of a vein of mineral-bearing quartz, other than the one which they had selected as the point at which they established their discovery shaft. The appellant contends that a location must be based upon what is found in the discovery shaft, adopted and claimed as such, and nowhere else. The Revised Statutes of the United States (§ 2320) provide that "no location of a mining claim shall be made, until the discovery of the vein or lode, within the limits of the claim located." There is no provision for a discovery shaft in the statute. Any discovery will meet its requirements, provided it is made before the location, and within its boundaries; nor is there anything in the statutes of the Territory which requires the election of any particular point in the claim as a discovery shaft, to the exclusion of all others. Section 1479 of the General Laws of the Territory provides "that, in order to entitle any person or persons to record in the county recorder's office of the proper county, any lead, lode, or ledge, there shall first be discovered on said lode, lead, or ledge, a vein or crevice of quartz or ore, with at least one well-defined wall." This is the same as the act of Congress *supra*, except that it requires one well-defined wall to be discovered. It is argued by counsel of appellant that "to allow the selection at will of any other shaft besides the nominal discovery shaft, when a location is contested, is to leave the whole matter open to uncertainty and doubt, and cause litigation. To allow it would be to allow a fraud upon the law, for, if a man may locate his discovery, when there is no vein, he may place it at a point between two veins over three hundred feet apart, and thus obtain a claim to two veins, when he would legitimately be entitled to but one."

The best answer to this argument is given in the Revised Statutes of the United States, wherein they provide that "the location must be distinctly marked on the ground, so that its boundaries can be readily traced." And, further, that all "records of mining claims . . . . shall contain . . . . such a description of the claim or claims located, with reference to some natural object or permanent monument, as will identify the claim." The fundamental mistake in the foregoing argument is, that it assumes that a notice on the ground, at the point of discovery, is necessary when it is not required by law. All that is required is a genuine discovery of a mineral-bearing vein, with at least one well-defined wall, and such a description of it in the declaratory statement of record as will identify it, and enable a person to easily trace its boundaries. Can it be said that because a locator of a mine puts up a notice, at a shaft which contains no mineral, when he has discovered mineral at another point in the same vein, and which is covered by his location, the boundaries of which can be readily traced, and the claim identified, that he cannot hold it for that reason? Certainly not. Such a holding would be to interpolate into the statute an amendment which would lead to most absurd consequences. In this case, suppose, if a locator should choose to put up a location notice between two leads, which are more than three hundred feet apart, and adjust his description from this point, and leave it uncertain as to which lead he has located, such a location would be void for uncertainty, and he would hold neither. After all, it depends upon the description of his claim under the statutes. It must be reasonably certain or it is worthless. We think the testimony upon this point was properly admitted.

2. A more difficult question is presented in regard to the sufficiency of the notice of location. It was objected to by the appellant upon the ground that it is not properly sworn to. The declaratory statement itself contains all that the law requires, but the objection is that the oath or affidavit is insufficient. It is as follows, to wit:—

"*Notice of location.* Notice is hereby given that the undersigned, having complied with the requirements of chapter 6 of title 32 of the Revised Statutes of the United States, and the local laws, rules, regulations, and customs of miners, have

located 1500 linear feet on the Argonaut Lode, situated in Summit Valley Mining District, Deer Lodge County, Montana Territory, and being more particularly described as follows, to wit: Beginning at a stake at southeast corner, and running west 1500 feet; thence north 600 feet; thence east 1500 feet; thence south 600 feet, to the place of beginning. Said lode is bounded on the south by the Silversmith, and southwest by the Goldsmith, and on the east by what is known as the 'Rooney Lode.' Above lode runs 900 feet easterly and 600 feet westerly from the discovery shaft, and 300 feet on each side. Located December 22, 1880.

"JOHN H. GLENN,

"JOHN HALE,

"JOHN B. CAMERON,

"Locators.

"TERRITORY OF MONTANA, $\}$ *ss.*
COUNTY OF DEER LODGE.

"J. B. Cameron, first being duly sworn according to law, deposes and says: That we are citizens of the United States, and are the locators of the foregoing described mining premises; that the description therein contained, as beginning at a stake at the southeast corner, running west 1500 feet; thence north 600 feet; thence east 1500 feet; thence south 600 feet, to place of beginning, — is true, and that the locators, whose names are subscribed thereto, are *bona fide* residents of Montana Territory.

(Signed) "JOHN B. CAMERON.

"Subscribed and sworn to before me this twenty-fourth day of December, 1880.

(Signed) "A. W. BARRETT, Notary Public.

"Filed Nov. 2, 1887.

(Signed) "W. F. SHANLEY, Clerk."

The Revised Statutes of the United States (§ 2324) provide that "all records of mining claims hereafter made shall contain the name or names of the locators, the date of the location, and such description of the claim or claims located, by reference to some natural object or permanent monument, as will identify the claim." The oath given *supra* shows that it does not contain the date of the location. It is also contended that it does not contain any reference to a natural object or permanent mon-

ument, so as to identify the claim. The description given in the affidavit is as follows, to wit: "Beginning at a stake at the southeast corner, running west 1500 feet; thence north 600 feet; thence east 1500 feet; thence south 600 feet, to the place of beginning." The question as to whether this is a sufficient description or not is a mixed one of law and fact. Definition and meaning of words used in a statute are matter of law, and as to whether the objects described come within the definition is a matter of fact for the jury. The location must be so marked on the ground that its boundaries can be readily traced. It must refer to some natural object or permanent monument, so as to identify the claim. There is no natural object referred to in the affidavit, and the only question is whether reference is made to anything that can be called a "permanent monument." In the case of *North Noonday Mining Co.* v. *Orient Mining Co.* 9 Mor. Min. Rep. 529, the court says that a "permanent monument" may consist of a stake located on the claim, and firmly planted in the ground. And in the case of *Russell* v. *Chumasero*, 4 Mont. 317, the court held that "it is not for a court to say, by looking at a record or declaratory statement, what are or what are not 'permanent monuments.' This is a matter of proof. A stake or a stone of the proper size, properly marked, may be a 'permanent monument.'" We hold that it is for the court to define in the instructions given to the jury what is a "permanent monument" within the meaning of the statute, and for the jury to determine from the evidence whether the object described in the notice of location comes within the requirements of the law. The description given in the oath calls for beginning at a stake. Whether that stake was of such size, and so firmly planted in the ground as to come within the meaning of the words "permanent monument," properly defined, was for the jury to find, under appropriate instructions from the court. The notice of location was properly admitted so far as that ground was concerned; but the oath does not contain the date of location. This is an essential element of description under the statutes of the United States. It is given in the body of the location notion, but is not sworn to. The laws of the United States do not require the location notice to be sworn to at all, and there is no question as to its sufficiency, so far as that

is concerned. But the laws of the Territory (Comp. Stats. § 1477, p. 1054) require the declaratory statement to be made on oath, describing the claim as required by the laws of the United States. Without the oath the statement is good, and with it, it is fatally defective. This brings us for the first time face to face with the constitutional question, whether the territorial legislature is not prohibited by the organic law from passing the act under consideration. Section 1851, Revised Statutes, United States, provides that "the legislative power of every Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States; but no law shall be passed interfering with the primary disposition of the soil." The act in question is not inconsistent with the laws of the United States. It simply imposes additional duties and burdens upon the locators of mining claims upon the public mineral lands of the United States. The simple question is whether it is such an interference with the primary disposal of the soil as to come within the Act of Congress. We think that it is not.

In the consideration of this question it is to be borne in mind that it is not a provision of a constitution, framed by a convention of delegates elected by the people, and afterwards ratified by a popular vote, with which we are dealing, but a legislative act of Congress. It is further to be borne in mind that all the legislative acts of Congress, bearing upon the subject, are to be taken into consideration in our endeavor to reach a correct solution of this question. We further observe that the Supreme Court of the United States says, in the case of *Hornbuckle* v. *Toombs*, 18 Wall. 654, in reference to the power of the territorial legislature, "that, as a general thing, subject to the general scheme of local government chalked out by the Organic Act, and such special provisions as are contained therein, the local legislature has been intrusted with the enactment of the entire system of municipal law, subject, also, however, to the right of Congress to revise, alter, or revoke at its discretion." And further, said court, in the case of *Hoyt* v. *Russell*, 117 U. S. 405, says, in speaking of this very statute, that "it is not necessary to express any opinion, whether after the passage of the Act of 1872, the legislature of the Territory could add any further requirement touching the record of notices of location." The qualifi-

cation, "after the passage of the Act of 1872," would seem to concede that it might have done so before the passage of that act. The act under consideration, requiring the location notice to be sworn to, was passed May 8, 1873, after the passage of the Act of Congress of May 10, 1872, from which the greater part of the Revised Statutes, bearing upon this subject, is taken. The first legislature that assembled in the Territory at Bannock, December 12, 1864, passed an "act relating to the discovery of gold and silver quartz leads, lodes, or ledges, and of the manner of their location." (Laws [Bannock Stats.] 1864–65, p. 327.) This act declared the right to one claim by discovery, and to another by pre-emption; that to entitle a person to record his claim, he must have discovered a lead with at least one well-defined wall; that the locator of a claim was entitled to two hundred feet along the lead, together with all dips, spurs, and angles; that when two leads crossed each other, the ore in the vein at the crossing should belong to the first discoverer; that before any claim should be recorded, it should be marked as directed by said act; that notice of the discovery should be filed in the recorder's office within fifteen days of the date of discovery; and each claimant was required to take an oath that he was a *bona fide* resident of Montana. There were several other regulations, which we need not enumerate here.

The foregoing is sufficient to show that, within a few months after this Territory was organized, its legislature passed a complete system of laws regulating the manner of locating and recording mining claims. Section 1851, *supra*, prohibiting the legislature from "interfering with the primary disposal of the soil," was in the original Organic Act, and was as much the law of this Territory when the Act of 1864, above referred to, was passed as it is now. The location of claims on the mineral lands of the United States seems to have been mainly regulated by local law, and the rules and regulations of miners in the several mining districts, until the passage of the Act of May 8, 1872. These laws were duly reported to Congress, and at least met with its tacit approval, as was the law under consideration. Judge Cooley, in his work on Constitutional Limitations, page 34, says: "Congress creates territorial governments of different grades, but generally with plenary legislative power, either in

the governor and judges, a territorial council, or a territorial legislature, chosen by the people; and the authority of this body extends to all rightful subjects of legislation, subject, however, to the disapproval of Congress. The legislation, of course, must not be in conflict with the law of Congress conferring the power to legislate; but a variance from it may be supposed approved by that body if suffered to remain without disapproval for a series of years after being duly reported to it." And he cites, in support of this doctrine, *Clinton* v. *Englebrecht*, 13 Wall. 434–446; *Williams* v. *Bank*, 7 Wend. 539; *Swan* v. *Williams*, 2 Mich. 427; *Stout* v. *Hyatt*, 13 Kan. 232. The said section, 1851, was made a part of the Organic Act of New Mexico and Utah in 1850; of Washington Territory, in 1853; of Colorado, in 1861; of Arizona, in 1863; of Dakota, in 1861; of Idaho, in 1863; of Montana, in 1864; of Wyoming, in 1868; and the territorial legislatures of all this vast mineral-bearing region passed laws governing the location and working of the mineral lands of the United States situated therein, which were approved by the Congress, and their constitutionality has never been questioned, either by Congress or by the courts, so far as we have been able to learn. But we are not left to depend upon this historical review alone, and the presumptions which arise from it, to sustain the constitutionality of the act under consideration. We can find internal evidence in the very acts of Congress itself, of the construction that Congress has always given to the power conferred by the Organic Act. Section 2319, United States Revised Statutes, provides that "all valuable mineral deposits in lands belonging to the United States . . . . are hereby declared to be free and open to exploration and purchase, . . . . under regulations prescribed by law, and according to the local customs and rules by miners," etc. The expression, "under regulations prescribed by law," is ample enough to embrace, not only the laws of Congress, but also those of the Territory. Again, in section 2322, we find that "the locators of all mining locations, . . . . so long as they comply with the laws of the United States, and with State, territorial, and local regulations, not in conflict with the laws of the United States, governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within

the lines of their locations. . . . ." Here we find a distinct recognition of the territorial laws, and the enjoyment of the right to the exclusive possession of his claim, by the locator, is made to depend upon his compliance with such laws. The only limitation put upon them is that they shall not be in conflict with the laws of the United States. Again, in section 2324, it is provided "that the miners of each mining district may make regulations not in conflict with the laws of the United States, or with the laws of the State or Territory in which the district is situated, governing the location, manner of recording, amount of work necessary to hold possession of a mining claim," etc. Here we have a provision of an act of Congress, conferring upon the miners of the several mining districts, the power to make regulations, governing the most important matters connected with mineral claims, but providing that they shall not be in conflict with the laws of the Territory in which the district may be situated. It is hardly to be supposed that Congress would confer upon so primitive a body as a miners' assembly, legislative powers which were denied to the territorial legislature. Congress, in passing the Acts of May 10, 1872, June 6, 1874, and May 5, 1876, which are compiled in the foregoing sections, seems to have taken it for granted that the territorial legislature already had the power to legislate upon these matters under the general grant contained in the Organic Act. There is nothing in section 2335 directing how patents may be obtained to mineral lands which is inconsistent with the foregoing views. It provides that the applicant for patent must comply "with the provisions of this chapter," which contains the foregoing recognition of the legislative power of the Territories. It will not do to say that the Territory had the power to legislate upon the subject before Congress, by the Act of 1872, and the supplemental Acts of 1874 and 1876 occupied the field. It would be as much an "interference with the primary disposal of the soil" to legislate upon it before as after the passage of these acts. The more Congress legislates upon it, the less room there is for local legislation. By the reservation to itself, of the sole right to dispose of the soil in the first instance, Congress meant to make title to its purchasers, and receive the product of the sales, and not to regard those local regulations, looking to the

acquisition of possessory rights merely, and their manner of enjoyment, as an interference with its prerogatives. We therefore hold that the oath to the declaratory statement is not sufficient in law, and it should not have been admitted in evidence. (*McBurney* v. *Berry*, 5 Mont. 300.)

3. We are not in possession of sufficient information to apply the doctrine of *communis error facit jus.* Let the case be reversed, and remanded for a new trial.

*Judgment reversed.*

BACH, J., and LIDDELL, J., concur.