McMillen et al. v. The Ferrum Mining Company.

**1. Mining Claims—Discovery of Mineral—Knowledge of Former Discovery.**

Where a locator relocated an abandoned mining claim, sinking his discovery shaft and posting notices several hundred feet from the discovery shaft of the abandoned location and filed his certificate designating his discovery as in the discovery shaft sunk by him, and he failed to make a discovery of mineral in the shaft sunk by him, the mere fact that he knew of the existence of a vein on the claim that had been discovered in the discovery shaft of the abandoned claim would not make his location valid.

**2. Instructions—Evidence.**

It is not error to refuse an instruction requested where there is no evidence or offer of evidence that calls for it.

**3. Mining Claims—Discovery Shafts—State Statutes—Adverse Suits.**

In a suit to determine the right to a mining claim as between adverse claimants where plaintiffs in their complaint alleged that the provisions of the state, as well as the federal statutes, had been complied with in their location, and where an instruction as applicable to both locations was given at plaintiffs' request, to the effect, that a valid location of a lode mining claim cannot be made unless the provisions of section 3152 Mills' Ann. Stats. in reference to the sinking of a discovery shaft and posting notice be complied with, plaintiffs cannot afterwards be heard to say that they may disregard the provisions of the state statute, which they themselves have invoked, and base their location on a discovery elsewhere than in their discovery shaft.

**4. Mining Claims—Previous Discoveries.**

A locator of a mining claim may avail himself of a previous discovery of mineral within the limits of his location without making a valid new discovery for himself, provided he adopts the previous discovery as his own and bases his location thereon; but where his location is based on an alleged new discovery in a shaft sunk by him, mere knowledge of the previous discovery will not cure the failure to make a discovery in his discovery shaft.

**5. Mining Claims—Underground Discovery—Evidence—Harmless Error.**

In a suit to determine the right to the possession of a mining claim as between adverse claimants, where plaintiffs alleged in

their complaint a valid discovery of mineral in their discovery shaft on which their location was based, and it appeared that no valid discovery had been made in their discovery shaft, it was not prejudicial error to refuse to permit plaintiffs to prove an underground discovery made through an adjoining claim, where such underground discovery was not followed up by the filing of an amended location certificate, and was made after defendant had made a valid discovery and perfected a location thereon.

**6.  Adverse Suits—Juries—Viewing Premises.**

In an adverse suit where plaintiff's evidence failed to make a case for submission to the jury, it was not error to refuse to send the jury to view the premises upon plaintiff's request.

**7.  Mining Claims—Second Discovery—Posting Notice.**

Where a locator of a mining claim made a second and valid discovery of mineral and amended his location certificate so as to base his location on said second discovery, it was not necessary to post notice at the point of second discovery.

*Appeal from the District Court of Lake County.*

Mr. George R. Elder, for appellants.

Mr. Charles Cavender, Mr. John A. Ewing and Mr. F. E. Bouck, for appellee.

Chief Justice Campbell delivered the opinion of the court.

This is an action brought by plaintiffs below as the owners of the Eulalia lode in support of an adverse claim filed by them in the United States land office against the application for patent by the defendant for the Golden Rod lode claim, situate in Leadville mining district. At the close of the trial the court ruled that under the pleadings and evidence plaintiffs had not made out their case, and after instructing the jury as to the essential requirements of a lode location said that if defendant had complied therewith a verdict should be returned for it. There was a verdict for the defendant, and from the judg-

ment thereon entered plaintiffs have brought the case here by appeal.

A number of rulings of the district court have been attacked as erroneous and argued by counsel which, were appellants in a position to complain, would merit most careful consideration. But since we have reached the conclusion that the trial court was right when it instructed the jury that plaintiffs were not entitled to recover, because they had not shown a valid discovery of mineral in their location, it follows that many of the rulings attacked, even if wrong, are not prejudicial to plaintiffs, and we, therefore, determine only that assignment relating to such discovery, as it is the only one of which they may complain.

1. The ground covered by the two claims is substantially identical. It was formerly included within the limits of the Winter lode, and a part of it was afterwards embraced within the exterior lines of the Pocket Liner lode. When, in 1893, plaintiffs' grantor went upon the ground, both of these claims were abandoned, and he proceeded to relocate as an abandoned claim the territory theretofore covered by them, and adopted the boundaries and stakes of the Winter location. He sank a discovery shaft to the depth of about twelve feet, and at the alleged point of discovery posted his location stake, and in due time filed for record his location certificate, in which, as we read it, the discovery is designated as in the discovery shaft.

At the trial, plaintiffs admitted that this discovery shaft did not disclose a well defined crevice. On the contrary, they conceded that it had not passed through the wash and *debris* usually encountered upon Breece Hill in the Leadville mining district. Notwithstanding that no discovery was in fact made in the discovery shaft, and the further fact that the

location, as made, was based upon such alleged discovery, plaintiffs contend that since their grantor, the locator, at the time he sought to appropriate the ground as the Eulalia lode, knew of the existence of a vein within the limits of that claim as surveyed— but several hundred feet distant from the discovery shaft of the Eulalia—which he, together with his co-owners of the Pocket Liner lode, had previously discovered in the process of its development, this knowledge was equivalent to an actual discovery by him of a vein within the Eulalia location.

That plaintiffs' contention may be correctly stated here, though it involves some repetition, we quote what their counsel said when asked by the trial court his purpose in offering proof of a former discovery and in the Pocket Liner lode:

"Mr. Elder: The proposition of the plaintiffs is simply this: That Mr. McMillen, as an owner and a locator of the Eulalia lode, knew at the time he placed his stake upon the Eulalia claim on the 30th of May, 1893, that he in company with the co-owners of the Pocket Liner claim, had discovered ore in the shaft of the Pocket Liner claim; that at the moment that he placed his stake upon that ground claiming the Eulalia claim as abandoned and unoccupied territory, that theretofore there had been a discovery of mineral within the requirements of the statutes of the United States, and of the state of Colorado, and that that knowledge within the mind of Mr. McMillen constituted a complete, final and perfect location of that mining claim, provided he did the other things requisite under the statutes of the state of Colorado, by sinking a discovery shaft ten feet in depth," etc.

And again in the printed briefs counsel for appellants says:

"We claim for appellants that the discovery made by one of them, Samuel McMillen, in the Pocket Liner shaft, while the same was being sunk in the years 1879 and 1880, formed a complete compliance and performance of one of the two prerequisites prescribed by the acts of Congress to vest in him the complete possessory title to the Eulalia lode mining claim, and that his entry upon the 30th of May, 1893, and distinctly marking the said claim on the ground and sinking a discovery shaft over a depth of ten feet, completed the other prerequiste to vest the title in him."

That the rulings of the trial court may also correctly appear, we take the liberty of reproducing what the judge said in reply to an attempt on the part of plaintiffs to show a discovery made by them in performing assessment work and doing certain other work subsequent to filing their location certificate. "You can," said the judge, "prove this, if possible, any discovery which you made on that ground. I care not where it is, or in what shaft it is; if you have made a discovery, prove it." And again: "If in 1895, you made a discovery upon that ground, and you claim under that discovery, you may go to work and prove your claim under that discovery."

From the foregoing it is apparent that learned counsel for appellants (plaintiffs below) contends that mere knowledge by the Eulalia locator of the existence of a vein in the Pocket Liner made his location valid, provided he performed the other statutory acts of location aside from the actual discovery of mineral.

It has been held that it is not necessary that the locator of a mining claim should be the first discoverer of a vein or lode in order to make a valid location. If it appear that the locator knew at the time of making his location that there had been a discov-

ery of a vein or lode within the limits of his location, he may base his location upon it, and thus avoid the necessity of making a discovery for himself.   The following are some of the cases:   *Book v. Justice Mining Co.,* 58 Fed. 106, 108; *Jupiter M. Co. v. Bodie Cons. M. Co.,* 11 Fed. 666; *Conway et al. v. Hart,* 129 Cal. 480; *Hayes v. Lavagnino,* 17 Utah 185; *Wenner v. McNulty,* 7 Mont. 30; *O'Donnell v. Glenn,* 8 Mont. 248; *Nevada Sierra Oil Co. v. Home Oil Co. et al.,* 98 Fed. 673.

But as stated by Judge Ross in the Oil Company case, *supra,* not only must the locator "have knowledge of the former discovery, but such actual discovery must be adopted and claimed by him in order to give validity to his location." That is to say, the locator must claim and adopt such previous discovery as his own and base his location upon it.

In the O'Donnell case, *supra,* the supreme court of Montana, it is true, held that the locator was not confined to the nominal discovery shaft, but might select some other place within the limits of the location and show a valid discovery there. But that decision, as the opinion clearly shows, was based upon section 2320 of the Revised Statutes of the United States, which merely provides that "no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located," and the supreme court of Montana aptly observed that there is no provision for a discovery shaft in the federal statute or any statute of Montana. The court further said that the fundamental mistake in the argument of counsel that a locator was not permitted to select at will any shaft besides the nominal discovery shaft, was "that it assumes that a notice on the ground, at the point of discovery, is necessary when it is not required by law."

Obviously, had there been in Montana, as there

is in Colorado, a statute which specifically declares that the locator shall sink a discovery shaft to the depth of at least ten feet, showing a well defined crevice, and shall also post at the point of discovery a location stake, the decision there would have been otherwise. And, whatever our views might be when the question is presented, it is a fair inference from the opinion in that case that where, in states that have provisions for discovery shafts and posting of notices on the ground, like our statute, the locator himself selects the discovery shaft as the one in which the discovery of mineral has been made, and there posts his location stake, and bases his location upon such discovery, he may not, after intervening rights have attached, abandon and disregard the same, neglect to comply with such provisions, and select another discovery upon which his location was not predicated.

Now, when tender of proof was made by plaintiffs' counsel of the former discovery, there was no offer to show that it was claimed by their locator or adopted by him as the one on which the Eulalia location was made. For this reason alone the court was justified in refusing to hear the proof offered, for it did not meet the requirements of the decisions in which the doctrine is laid down that a former discovery may be the basis of a valid location.

It is true that in tendering instructions, plaintiffs submitted one which contained the element of an adoption by the relocator of a former discovery as the one upon which his own location was based. There was no error by the trial court, however, in refusing to give this instruction, because there was no evidence, or offer of evidence, by plaintiffs that called for it. The fact that plaintiffs' grantor knew and claimed that there had been a former discovery is not equivalent to, nor does it supply the place of,

its selection by him as the one on which his location is based, particularly in the light of the declaration in the location certificate that the discovery of the Eulalia location was made in a discovery shaft in no way connected with, and some hundred feet distant from, the place where the former discovery is said to have been made. It follows from what we have said that plaintiffs have not brought themselves within the doctrine they contend for, and are not in a position to invoke its application to their case as made.

2. There is another reason for holding that plaintiffs may not avail themselves of that rule. It appears that they not only do not question the validity of our state statutes which prescribe certain acts as necessary to a valid location, but in their complaint they aver that, in the location of the Eulalia lode, the provisions of the state, as well as of the federal, statutes were complied with; and among the instructions which they themselves asked the court to give was one—applicable both to their own and the Golden Rod location—in which was the declaration that, as provided by section 3152 Mills' Ann. Stats., a valid location of a lode mining claim cannot be made unless the locator sinks a discovery shaft upon the lode discovered to a depth of at least ten feet from the lowest part of the rim of such shaft at the surface, or deeper if necessary to show a well-defined crevice, and unless he posts at the point of discovery on the surface a location stake containing certain designated things.

Such being true, plaintiffs certainly cannot now be heard to say that they may at their will disregard these mandatory provisions of state legislation which they themselves have invoked, for, if we assume their validity (which plaintiffs themselves do not question, and which they declare they have complied with), the

discovery shaft must expose the vein upon which the location of the Eulalia lode was based, or at least one vein, and a discovery elsewhere within the limits of the claim will not supply its place.—*Beals v. Cone,* 27 Colo. 473, 499.

Lindley on Mines at section 250 (15) says that state courts have uniformly enforced provisions like those of ours concerning discovery shafts and posting of notices, notwithstanding doubts by the Interior Department as to their validity. See, also, *Van Zandt v. Argentine M. Co.,* 8 Fed. Rep. 725; *Ibid,* 122 U. S. 478; and Morrison's Mining Rights (9th ed.) 29. But, as already shown, plaintiffs are not questioning their binding force and are not in a position to do so.

3. From what has already been stated, it is clear that the trial court did not preclude plaintiffs from showing a valid discovery of mineral within the limits of the Eulalia location before the rights of defendant attached, though from a superficial examination of the record the contrary might appear. The assertion that defendant has failed to establish a valid location is not borne out by the evidence. Defendant's proof in that behalf is amply sufficient to show a valid location, assuming, as the record justifies, that plaintiffs' location was invalid.

We feel it to be our duty not to close this opinion without expressing our disapproval of the severe strictures made by counsel for appellants upon the rulings of the trial court. Doubtless he sincerely believed that injustice had been done his clients, but sarcastic references to the trial judge and invective employed against him do not aid appellate courts in determining legal controversies.

A careful examination of this record satisfies us that no error was committed by the trial court of

which appellants may complain. The judgment should, therefore, be affirmed, and it is so ordered.

*Affirmed.*

## On Petition for Rehearing.

Chief Justice Campbell delivered the opinion of the court.

In the oral argument in support of their petition for rehearing, counsel for appellants confined himself to three general propositions, and to these will our discussion be mainly devoted.

1. That the locators of the Eulalia lode might have availed themselves of a previous discovery within the limits of that location, and might have adopted the same as their own and based their location upon it without making a valid discovery for themselves, there can be no doubt under the authorities cited in the foregoing opinion. Appellants' argument as to this point may be dismissed with the single observation, which, in fact, has already been made, that they did not do so. The record clearly shows that they have not brought their case within the principle contended for, since in their offer of proof they expressly rely upon mere knowledge of a former discovery and make no pretense of having adopted it as their own. It is apparent that appellants, while right in their statement of the law, are wrong in supposing that the facts of this case call for the application of any such principle.

2. Appellants again call to our attention their assignments of error directed against the rulings of the trial court refusing their offer of proof of a discovery within the limits of the Eulalia made through the underground workings of the Little Vinnie claim. In the original opinion no special reference was made to this position, because the radical defects in appel-

lants' proof, as shown by their offer and by the record, did not seem to us to call for an application of the rules of law invoked. Further investigation, particularly in the light of the oral arguments on this rehearing, clearly demonstrates the fallacy of this claim. As we have already determined, appellants' location of the Eulalia has no standing at all, if based upon a former discovery made in 1879, or upon the one alleged to be made in May, 1893, at the time they went upon the ground and made their location, and which is admitted to be in the wash which covers the side of the mountain. At the trial, though no such claim is made in the complaint, there was an attempt to show a valid discovery made from the adjoining Little Vinnie lode. When the trial court ruled that a valid discovery could not be made from an opening on another claim or government land, it was error, but in view of the facts on which appellants themselves admit their present contention is founded, such ruling was not prejudicial for the reasons which we now state. If it be granted that such a discovery was made, appellants wholly failed to follow it up by doing the other essential things which we said in *Brewster v. Shoemaker*, 28 Colo. 176, should be done in order to perfect an underground discovery.

This underground discovery is said to have been made between the months of September and December, 1894. If so, we fail to see how it can avail the appellants, for earlier in the year of 1894 the appellee, as the jury must have found, and as the evidence abundantly shows, made a valid discovery in the old Pocket Liner shaft within the present boundaries of the Golden Rod location. This discovery, as well as the location based upon it, is prior to that of appellants, whether or not the law requires in such circumstances an amended, or additional, location certificate to be filed. If the law does not require such filing, appel-

lee's location of the Golden Rod is superior to the Eulalia, for the former is first in point of time; but if such location certificate must be filed, still appellee must prevail, for appellants have never filed such certificate at all, and appellee, in March, 1895, filed its amended location certificate in which it bases its location upon the discovery made in the Pocket Liner shaft. It therefore conclusively follows, according to the facts as appellants themselves on the oral argument admit them to be, that there was no prejudicial error on the part of the trial court in rejecting appellants' offer of proof of a subsequent underground discovery, since, if it was made, it was not until after appellee had made a valid discovery, and perfected its location, of the Golden Rod.

3. Section 188a Mills' Ann. Code, declares that in a suit like the one at bar it shall be the duty of the court at the trial, upon application of either party, to send the jury impaneled in the case in a body to view and inspect the premises. At the trial below, the plaintiffs made such application. Whether they complied with other provisions of the same statute as to advancing the expenses which a compliance with the request involves, we do not pause to inquire; for the assignment attacking the ruling denying the request may be disposed of on more satisfactory grounds. In *Connolly v. Hughes,* 18 Colo. App. 372 (71 Pac. Rep. 681), our court of appeals, assuming that the provision of the statute was mandatory, held that it did not apply to a case, such as was then before the court, where the party making the request had not introduced any evidence to establish his case. We think that ruling was right, and the principle applies to this case. Although the plaintiffs here did introduce evidence to establish the validity of their title, they wholly failed to make out a case for submission to the jury.

We may fitly observe that appellants, in insisting upon their right to have the jury inspect the Pocket Liner shaft for the purpose of enabling it to discover whether or not a vein of mineral was disclosed therein, are so inconsistent with another, though not the sole, claim made by them, namely, that the validity of their own location depends upon a former discovery made in the same shaft in 1879, that their supposed grievance at this ruling of the court does not impress us as meritorious. It would seem to be altogether useless to send the jury to inspect the premises for the purpose of enabling them to determine whether or not a vein is disclosed in the Pocket Liner shaft, when the parties making such request, as to one branch of their case, rested the validity of their own location upon its existence.

4. In the oral argument counsel for appellants conceded that, if it was not necessary for appellee to post a new notice at the point of the second and valid discovery of the Golden Rod vein in the Pocket Liner shaft made early in 1894, which the amended location certificate of the appellee recited, the Golden Rod location is superior to the Eulalia. In the case of the *Treasury Tunnel M. & R. Co. v. Boss, ante* 27, decided at this term, we have substantially held that such posting was not necessary under such facts as exist here.

5. We desire further to say that the statement in appellants' petition that we have not applied the same principles of law to the location of these two claims, in so far as they are based upon the discovery of mineral in the Pocket Liner shaft, is incorrect. The facts attending the two locations are not the same, as we have already said; hence, the rule applicable to the one case is not the same that governs the other. The locators of neither lode posted at the point of discovery in the Pocket Liner shaft a loca-

tion stake or notice, but the location of the Golden Rod, resting upon the discovery in the Pocket Liner shaft, is not only earlier in point of time, but its locators filed, and had recorded, an amended location certificate basing the location upon such discovery; while the locators of the Eulalia have never filed but one location certificate, and therein the statement is that the location is based upon a discovery which appellants now admit is invalid because it is in the wash on the mountain side.

The petition for rehearing is denied, and the former opinion adhered to.    *Rehearing denied.*