### No. 15,098.

Schuman et al. *v.* Venard et al.
(136 P. [2d] 289)

Decided February 15, 1943. Rehearing denied April 19, 1943.

Mr. John R. Wolff, for plaintiffs in error.

Mr. William O. De Souchet, for defendants in error.

*En Banc.*

Mr. Justice Goudy delivered the opinion of the court.

This is an action in ejectment, involving a mining claim known as the Zip lode, situate in the Gold Hill mining district, Boulder county, Colorado. Plaintiffs in error, defendants below, and defendants in error, plaintiffs below, will hereinafter be designated as they appeared in the trial court.

April 17, 1941, plaintiffs filed an action against de-

fendants alleging that they were the owners and entitled to possession of the Zip lode, from which defendants had ousted plaintiffs and had attempted to relocate as the Gold Coin Fraction lode. The pertinent facts are as follows: February 13, 1919, a location certificate was filed for record on the Zip lode by McDaniel and Reinhart; May 18, 1929, plaintiff Venard acquired title through sheriff's deed and thereafter conveyed a one-half interest to plaintiff Adler. Affidavits of labor, or affidavits in lieu thereof, were filed each year from 1919 to and including 1940. The recorded location certificate and the sheriff's deed were offered in evidence by plaintiffs as "color of title." The Zip lode, an unpatented mining claim, hereinafter referred to as the Zip, is necessary for the practical and economical working of the Sunshine mine adjoining it, providing surface dump, track, road, and necessary buildings therefor, and contains the portal of the Sunshine tunnel. January 30, 1939, plaintiffs entered into a bond and lease on the Zip with Mining Associates, Inc. Thereafter portions of the purchase price were paid, and Mining Associates, Inc., used the property for operations on the Sunshine. Defendants were employees of Mining Associates, Inc., and worked in the Sunshine mine and on the surface of the Zip daily during such employment for about two years. Mining Associates, Inc., got into financial difficulties in the year 1940 and was unable to continue with the operation of the Sunshine, and defendants became sublessees of Mining Associates, Inc., and thereafter operated the Sunshine, using the surface properties of the Zip, hereinafter mentioned, for that purpose until November, 1940, at which time the lease to Mining Associates, Inc., on the Sunshine was cancelled, and it was then leased to defendants. The hillside where the Zip is located is steep and badly eroded. There is evidence in the record of a tunnel on the Zip, from thirty to ninety feet in length, dug at plaintiff Venard's expense, and of a long cut and tunnel on the Sunshine vein which crosses the Zip lode,

all of which were afterwards covered by the Sunshine dump, and of a map which showed a discovery cut. Defendants introduced evidence to show that no discovery cut existed on the Zip at the point recited in the location certificate, and that the only surface working that could be found was an old shaft about five feet deep, below the lowest rim of the shaft, which was about fifteen feet from where the discovery cut was supposed to be located; that this shaft was in the granite and did not expose any vein. There is a wagon road to the Zip, and across it, and a change-house had been constructed thereon in 1938, an ore-bin in 1939, and a compressor-house and blacksmith shop in 1940. Defendants negotiated with plaintiffs for the lease or purchase of the Zip but were not able to agree upon terms. Thereafter defendants investigated the Boulder county records and explored the surface of the Zip for evidence of a discovery and location work thereon, and January 21, 1941, attempted to relocate the Zip under the name of Gold Coin Fraction, as a part of the public domain. The claimed discovery shaft of defendants is located inside the Sunshine tunnel and upon the Zip, and on the Sunshine vein, which defendants knew existed there. Between January 30 and February 3, 1941, plaintiffs removed some of their buildings from the Zip, and February 2, 1941, erected a "No Trespassing" sign on the claim. Location certificate of defendants was filed for record February 19, 1941, with an amended certificate May 31, 1941.

Counsel for defendants contend that it was necessary for plaintiffs to prove compliance with the mining laws relating to marking boundaries, the discovery of a lode, and a discovery shaft, cut or tunnel. Further, that the annual labor for the year from June 30, 1939, to June 30, 1940, was not performed on the Zip, but the trial court, on conflicting evidence, found that the annual assessment work had been performed, and this finding will not be disturbed. Defendants presented evidence

in an attempt to prove that there never had been a discovery of mineral on the Zip, and that the purported location work thereon was insufficient, but that they had made a proper discovery and had done the necessary work on the Gold Coin Fraction. It may be doubted that defendants' attempted location is valid. At the conclusion of the evidence the trial court found that defendants had attempted to locate the ground as the Gold Coin Fraction for the same purpose as plaintiffs were using the Zip—that is, for a dump for the Sunshine, and not to mine on the Zip. The learned judge stated, inter alia: "My impression is a good deal the impression Mr. Parks has given, that there has never been disclosed a proven mineral of practical value on this claim." In view of this finding, the cases cited by counsel for defendants on valid locations would seem to have no application here. In his written findings the court says: "That a reasonable presumption exists that the discovery and location of the Zip lode mining claim, location certificate of which is found recorded in book 332, at page 514 of Boulder county records, was in all respects regular and in accordance with the mining laws, customs and usages in force and effect at the time of said location; and that the defendants have not produced sufficient evidence to overcome that presumption; wherefore the court finds the facts to be that said Zip lode, as described in said location certificate, was duly and regularly discovered and located." We believe the judgment of the trial court was correct.

In *Strepey v. Stark,* 7 Colo. 614 (5 Pac. 111), we said (p. 621): "It is further to be observed that the rule in ejectment, that the plaintiff must recover, if at all, on the strength of his own title, and not upon the weakness of that of his adversary, is held not to apply to possessory actions for mining claims, where neither party has, strictly speaking, any legal title, but when the prior possession of plaintiff is pitted against the present possession of the defendant. 'Practically, the real question

involved in all such cases is: Which, as against the other, has the better right to mine the land in question?' *Richardson v. McNulty et al.,* 24 Cal. 339."

In *Lebanon Mining Co. v. Consolidated Republican Mining Co.,* 6 Colo. 371, we said (p. 380):

"Entering upon premises in the actual possession of another, for the purpose of performing the acts necessary to constitute location and possession, amount only to a trespass, and cannot form the basis for the acquisition of title.

\* \* \*

"There was evidence tending to establish plaintiff's cause of action; evidence of a long continued and uninterrupted possession; of the expenditure of large sums of money in development of the property in dispute, from the workings in the tunnel and upon the surface as well. This is a possessory action, and proof of possession of a mining claim is always *prima facie* evidence of title. It is presumptive of the ownership declared on, and, until overcome by evidence of a superior character, is sufficient to maintain the action. \* \* \* It has been held that if the plaintiff is unable to prove a valid location in accordance with the mining laws in force, yet if he show actual possession under color of title at the time defendant entered, he may recover in ejectment. And since there is no time prescribed within which the plaintiff shall make application for a patent, his possession may in time ripen into a perfect right. *Harris v. Equator Mining & Smelting Co.,* 2 Col. Law Rep. 63."

In *Sears v. Taylor,* 4 Colo. 38, we said (p. 41): "The appellee proved an unequivocal, exclusive and continued possession for three years previous to the alleged entry of appellant. \* \* \* The evidence even shows that the appellant, before his entry, so far admitted the right of appellee, that he offered to pay the latter a certain price for the premises. \* \* \*.

"Ejectment is a possessory action; and to maintain it, the defendant must be in possession, actual or construc-

tive, at the time of commencing the suit. This possession is presumptive of ownership until the contrary is shown. The plaintiff in such action avers prior possession and right of possession, by fee or otherwise. If he shows such prior possession upon trial, the title he has declared upon will be presumed, without his being required to trace his title back to its origin, in the first instance.

\* \* \*

(p. 43) "Hence if any less estate than a fee is averred, proof of possession is presumptive evidence of seizin under such averred title.

"This rule is consistent with the underlying doctrine, that the State or general government, in its corporate and sovereign capacity, holds and always retains the absolute and ultimate right of property in and to all the land within its territorial limits; and that possession in an individual is *prima facie* evidence of the grant of an estate from the sovereign authority. Bingham on Real Estate, pp. 2-5.

"Hence the plaintiff need not go back in his title further than to antedate that of the defendant."

In *Niles v. Kennan*, 27 Colo. 502 (62 Pac. 360), we said (p. 505):

"We are strongly impressed with the equities of defendant, \* \* \* because of the recognition by plaintiff in dealings between them that defendant's rights to the controverted strip of ground were superior to his."

Plaintiffs in the case at bar are not the original locators, but hold under a sheriff's deed.

In *Harris v. Equator Mining & Smelting Co.*, 2 Colo. Law Rep. 63, 8 Fed. 863 (for the District of Colorado), the court said (p. 865):

"It is clear that a purchaser may be in a different position from the locator of the claim, not as against the general government, with which nothing can avail but strict compliance with the law regulating locations, but as against other citizens seeking to locate the same ground. It may well be said that a purchaser in posses-

sion under a conveyance regular in form is in by color of title, which, in time, under the statute of limitations, will ripen into a perfect right.

\* \* \*

"A locator of a mining claim on the public lands is required to conform to the statute and the local rules of the mining district in which his claim may be situated, in order to establish his right to a full claim, \* \* \*. Conceding that proposition, it does not follow that a locator in actual occupancy, who has been evicted by a wrong-doer, must give evidence of every fact necessary to a valid location in an action to recover possession; not on the ground that the essentials of a valid location are in any case to be omitted, but that in support of undisturbed possession, long enjoyed, a presumption may in some cases arise that the location was at first well made."

In *Cheesman v. Hart,* 42 Fed. 98 (also for the District of Colorado), it was said (p. 102):

"Severe criticism is made of that portion of the charge respecting the assault made by plaintiffs upon the discovery location on the Champion Claim. \* \* \* The statute of Colorado (sections 2399, 2401) provides for such location of certificates to the discoverer of a lode, and what shall be done by the locator before filing such location certificate, so that such certificate amounts to and imports something. The evidence on both sides tended to show the long-standing indications of a staked claim, and of shafts sunk or holes dug. The witnesses differed only as to the precise point of such workings. The claims had stood unchallenged for years, and work of more or less importance had been prosecuted at various points on these claims years before this controversy. If, after all this, the court should not tell the jury that every reasonable presumption should be indulged in favor of the discovery of a lode by the miner, it is difficult to conceive of a state of facts where such intendment should arise. Any other rule, it seems to me, would

render such claims practically unmarketable or value-less in the hands of an assignee. The miner goes, digs, and delves, and is so satisfied that he makes the survey, stakes off his claim, and then makes his location certificate, which is entered of record. After this he sells to an honest man and passes out of view or dies. All the subsequent workings go to show the existence of a lode or vein on the claim of more or less importance. Can it be that after the lapse of many years the assignee must lose his claim because of his inability to produce the lost or the dead, and prove affirmatively an actual visible discovery by the original locator of ore in place where he dug? Possibly the charge in this particular would have been more theoretically correct had the court told the jury that it was not necessary that defendants should establish such discovery by witnesses to the physical fact at the time. But the same might be inferred from the certificate of location, the manifestations of workings done, the long tenure of the claim, the development of a vein on the claim by subsequent working, and from all the surrounding circumstances. * * * Nor do I think even after 'cooling time' that the language employed respecting 'witnesses sent to these old openings, with their accumulated *debris*, to obtain evidence by inspection that no vein was in fact found by the original locators,' as also what was later on said respecting witnesses in general, was any too strong."

A review of the evidence upon which the trial court entered judgment in favor of plaintiffs, and of the law applicable thereto, reveals no error which justifies a reversal, and the judgment is affirmed.

MR. JUSTICE HILLIARD dissents.

### On Petition for Rehearing

MR. JUSTICE HILLIARD dissenting.

Defendants in error, proceeding April 17, 1941, sued in ejectment to oust plaintiffs in error from a so-called

unpatented mining claim, the Zip lode, contending that they had been dispossessed of the same by plaintiffs in error, who still withheld the possession from them. Defendants in error claimed ownership by virtue of an alleged recorded location certificate.

Subsequently defendants in error filed a bill of particulars, alleging ownership of the possessory title to the Zip claim "by virtue of discovery and location * * * and by virtue of full compliance with the laws of the United States and of the State of Colorado in relation thereto." These allegations are denied by plaintiffs in error, who allege that the land in question is a parcel of their Gold Coin Fraction Lode Mining Claim, duly "located on the public domain of the United States."

The record discloses that in the early history of the Zip claim an ore reduction mill was erected upon the property, which defendant in error Venard had acquired on execution sale; that this mill was subsequently dismantled and taken off of the claim by Venard; that defendants in error sold the Zip claim to Mining Associates, Inc., in 1939, and that part of the purchase price was paid; that the officers of this company admit they made the purchase to avoid any controversy over their right to use the Sunshine tunnel for the operation of the Sunshine mine, the portal of which tunnel is on the edge of the Zip claim; that Mining Associates, Inc., erected a small blacksmith shop at the portal of this tunnel for their exclusive use in the operation of the Sunshine mine and that they knew of no vein or mineral on the Zip claim at the time they made the contract in question, or at any other time; that later Mining Associates, Inc., gave up their lease on the Sunshine mine and forfeited the payments they had made to defendants in error for the purchase of the Zip claim; that shortly thereafter defendants in error dismantled the blacksmith shop for its salvage value; that subsequently plaintiffs in error obtained a block lease on the Sunshine mine; and that defendants in error thereupon demanded

that plaintiffs in error purchase their Zip claim for the sum of $500.00, as a condition precedent to operating their lease through the Sunshine tunnel.

The undisputed facts definitely demonstrate, as I view it, the sham character of the purported location of the Zip claim. I am persuaded from the record that holding the Zip claim on the part of defendants in error, was purely for selfish exploitation purposes, and with no intention whatever on their part of compliance with the terms of the federal and Colorado statutes authorizing such locations. It is clear, as I shall show, that since defendants in error never made a *"discovery"* they had no valid location, and therefore it is conclusive that their exactions and demands upon plaintiffs in error were unlawful and virtually amounted to attempts to extort.

In view of the fact that Mining Associates, Inc., erected the blacksmith shop to facilitate their own operation of the Sunshine mine, and in view of the further fact that the blacksmith shop was dismantled by defendants in error after the company surrendered the property to them, it seems conclusive that there never was any intention on the part of the parties involved that the blacksmith shop would benefit the Zip claim. It is elementary that improvements and work *must* be for the benefit of the claim to satisfy the requirements of the law as to annual labor. I am not in accord with the holding of the trial court, approved here, that the erection of the blacksmith shop "satisfied the provisions of the law with reference to annual assessment work." Therefore, for the want of discovery and the assessment work the ground was open to location.

The evidence clearly shows that from the date the Zip location certificate was recorded, up to the time plaintiffs in error made their discovery in January, 1941, no mineral vein had ever been discovered within the confines of the Zip claim; that only desultory work in the guise of annual labor had been done on the Zip claim, prior to 1939, by the extension of a surface tun-

nel through slide rock, without the disclosure of any discovery vein upon the property.

The trial court erred, as I think, proceeding in the absence of proof of *discovery* of a vein of mineral, as required by law, in finding "that a reasonable presumption exists that the discovery and location of the Zip Lode Mining Claim, * * * was in all respects regular and in accordance with the mining laws." The trial court admitted in evidence the location certificate to the Zip claim upon the theory that defendants in error thereby submitted such evidence of title as to entitle them to prevail in ejectment. This also was error, as I view it, and these errors are reflected in the court opinion here.

The proof of recording and marking a claim will not authorize the court to *presume* a *discovery*. *Smith v. Newell*, 86 Fed. 56. It is elementary that subsequent grantees cannot maintain an action in support of a claim that could not have been sustained by the original locator. *McMillen v. Ferrum Mining Co.*, 32 Colo. 38, 74 Pac. 461. A location based on discovery can be made only by the discoverer, or by one who claims under him; and if the discovery fails the location falls with it. *Gwillim v. Donnellan*, 115 U.S. 45.

It seems clear, as I conceive, that since the filing of a certificate of location containing an allegation of a discovery is a mere *ex parte* self-serving declaration on the part of the locators, and not evidence of discovery (*Cole v. Ralph*, 252 U. S. 286, 303); and since without proof of discovery no location is of any value, nothing emanates from such certificates of location. Moreover, it is clear that until positive proof of discovery is made there can be no presumption which would entitle defendants in error to prevail in ejectment on the claim of color of title by virtue of their certificate of location.

It is indisputable, as I understand, that the statute itself presupposes a discovery, for to "work" a mining claim is to do something toward making it productive,

such as developing or extracting an ore body after it has been *"discovered."* If any other interpretation was put upon the statute it would subject non-mineral land to acquisition as mining claims. In the absence of positive proof of discovery, proof of working or holding and prospecting would not come within the contemplation of congress in the enactment of the statute. *Cole v. Ralph, supra,* p. 307. The concluding paragraph of the case just cited seems controlling here for the reason that it is said the defendant in that case could receive no benefit under the statute in the absence of a discovery.

"Discovery in all ages and all countries has been regarded as conferring rights or claims to reward. Gamboa, who represented the general thought of his age on this subject, was of the opinion that the discoverer of mines was even more worthy of reward than the inventor of a useful art. Hence, in the mining laws of all civilized countries the great consideration for granting mines to individuals is discovery." *Lindley on Mines* (3d ed.) section 335. Text quoted in *Creede and Cripple Creek M. & M. Co. v. Uinta T. M. & Co.,* 196 U.S. 337, 343. "The proof of recording and marking a claim will not authorize the court to presume a discovery." Lindley, Ibid.

Discovery of mineral is the initial fact. Without that *no rights* can be acquired. Such discovery must precede the location, or be in advance of intervening rights. *Beals v. Cone,* 27 Colo. 473, 62 Pac. 948, and numerous decisions of federal and state courts.

The court opinion here, as I understand it, is founded upon erroneous premises, one of which is that there was conflicting evidence as to the validity of the lode location of plaintiffs in error, and particularly as to its discovery. Defendants in error did not challenge plaintiffs in error's discovery, as I think the record shows. They seem to have rested their case upon the *presumption* of their own compliance with the mining laws of the United States and of the State of Colorado.

Moreover, the evidence conclusively discloses that plaintiffs in error sunk a discovery shaft, and by such shaft opened the extension of the Sunshine vein, from which the Sunshine mine has produced large quantities of valuable ore; also, that the vein disclosed in their discovery shaft contained ore of the value of more than ten dollars a ton. These facts are not controverted; and, as I believe, fully meet the requirements of the law.

Plaintiffs in error, experiencing a feeling of outrage at the demand of $500.00 from them by defendants in error for the use of the Zip claim in their operation of the Sunshine property, investigated the records and had the ground surveyed, from which it appeared that the purported location of the Zip claim was not predicated upon a mineral discovery, as required by law, and that the discovery cut mentioned in the location certificate did not exist and that no vein of any kind had ever been opened up thereon. The circumstances considered, plaintiffs in error were confronted with the alternative of paying what they regarded as tribute to defendants in error, or of making a valid vein discovery and location of their own. Thereupon, they located their Gold Coin Fraction Lode Mining Claim.

The court opinion quotes the "impression" of the trial court, wherein the court said: "My impression is a good deal the impression Mr. Parks has given, that there never has been disclosed a proven mineral of practical value on this claim." In so far as plaintiffs in error's rights are concerned, I cannot subscribe to this finding, although as to defendants in error the statement is well justified. Besides, as I understand, it is wrong as a matter of law. Mr. Park's testimony was to the effect that there was no mineral on the claim in which he would be interested. Such testimony is wholly immaterial. The question involved is not what would interest the witness, but what would validate a lode location. The evidence adduced by plaintiffs in error shows conclusively that mineral of the value of more than ten dollars

was discovered in their discovery shaft. The evidence adequately meets the most critical requirements of the statute to validate a lode location. Moreover, "practical value" of the mineral in a discovery is not the test. The courts have ruled that an appreciable value which would induce a prudent person to develop the claim is sufficient. A value of one ounce of silver has been held sufficient.

In *Cole v. Ralph,* supra, at page 296, it is said: "Location is the act or series of acts whereby the boundaries of the claim are marked, etc., but it confers no right in the absence of discovery * * *." Citing, *Warkey v. Hamer,* 223 U.S. 85, 90-91; *Beals v. Cone,* 27 Colo. 473, 484, 495, 62 Pac. 948. The court there, referring to holding and working a claim for a long period, commenting further on the requirements of the statute, said that such action obviated the necessity for proving the posting of a location notice, etc., but that it did not dispense with the proof of discovery. *"Discovery* is made the source of title, and *development,* or working, the condition of the continuance of that act." Halleck's De Fooz on the Law of Mines, as quoted in section 335, 2 Lindley on Mines (3d ed.).

Clearly, as I think, defendants in error failed to show "Discovery" in the first instance, and neglected assessment work in the second instance. Not only are they void of works, most essential, but of the grace of motivating faith. They should not enjoy writs calculated to protect them in their faithless and workless possession.

Since the petition for rehearing, which I favor, is to be denied, I dissent as originally.